### JAMES GALLAGHER, Appellant, v. CITY OF LAS VEGAS, Respondent.

No. 29354

### CITY OF LAS VEGAS, Appellant, v. WILLIAM SORENSEN, Respondent.

No. 29615

May 19, 1998                                                      959 P.2d 519

*Nancyann Leeder,* General Counsel, Nevada Attorney for Injured Workers, Carson City, for Appellant Gallagher and Respondent Sorensen.

---

*McGroarty & Lane, Chtd.* and *Jason M. Burk*, Las Vegas, for City of Las Vegas.

## OPINION

*Per Curiam:*

In these appeals, we are asked to decide whether veteran firefighters who are disabled by heart disease after they retire are entitled to occupational disease benefits under NRS 617.457(1), which establishes a conclusive presumption that a firefighter's heart disease arose out of and in the course of employment if certain conditions are met. Based on the history and language of the statute, and the public policy underlying its enactment, we conclude that appellant Gallagher and respondent Sorensen may invoke the conclusive presumption to establish their claims for benefits.

### FACTS

*Gallagher, Docket No. 29354.* The City of Las Vegas

employed appellant James Gallagher as a firefighter on a full-time, continuous, uninterrupted, salaried basis from February 1962 until June 30, 1992, when he retired. During his employment, Gallagher underwent mandatory annual physical examinations, none of which revealed any heart disease. Nevertheless, in 1991 Gallagher felt unwell. He attributed being tired all the time to his demanding work schedule, but was concerned about recurring pain in his side, shoulder and jaw. Gallagher reviewed his 1991 physical with his family doctor, who explained that everything appeared normal. Gallagher passed his next mandatory physical in early 1992, but was still experiencing pain along the back of his arm and in his jaw, shoulder and side. In addition, he was experiencing some shortness of breath. Gallagher had planned to retire on January 1, 1993, but when the City offered him an early retirement, he immediately accepted it and retired on June 30, 1992.

On January 31, 1994, Gallagher suffered a heart attack and learned he had coronary artery disease. He underwent angioplasty to increase blood flow in his right coronary artery. In February 1994, Gallagher submitted a claim for benefits. The City, a self-insured employer, denied the claim. The denial of benefits was upheld on review by a hearing officer and an appeals officer, who both concluded that Gallagher did not qualify for the conclusive presumption of coverage provided by NRS 617.457(1) and did not prove a causal connection between his heart disease and his employment. The district court denied Gallagher's petition for judicial review, and Gallagher appeals.

*Sorensen, Docket No. 29615.* The City of Las Vegas employed respondent William Sorensen as a firefighter on a full-time, continuous, uninterrupted, salaried basis from November 1957 until June 1992, when he retired. Sorensen also took and passed mandatory annual physical examinations. In June 1982 Sorensen experienced chest pains at work, with pain in his left arm and other symptoms of a heart attack, for which he sought emergency care. A cardiologist examined Sorensen, had him take a stress treadmill test and placed him on a 24-hour heart monitor; the tests revealed an irregular heartbeat, but no evidence of heart disease.[1] Although Sorensen experienced intermittent exercise-induced chest pain for some time before he retired, and his 1990-1992 treadmill tests suggested possible arterial blockage,

---

[1]After the 1982 incident, Sorensen submitted a claim to the State Industrial Insurance System ("SIIS") for reimbursement of his medical expenses under NRS 617.457. SIIS denied the claim. The hearing officer and appeals officer who reviewed the denial affirmed it because there was no evidence that Sorensen had heart disease. The agency decision was not appealed and is not now at issue.

follow-up thallium stress tests revealed no evidence of heart disease. After he retired, Sorensen underwent physical examinations in December 1992 and December 1993, which were also negative for heart disease.

On February 15, 1994, Sorensen suffered a severe angina attack. An electrocardiogram administered the following day yielded normal results, but because Sorensen was still in pain, his family doctor referred him to a cardiologist. When additional tests indicated arterial blockage, Sorensen was taken by ambulance to Sunrise Hospital. Catheterization revealed severe artery disease: the left main artery, which supplies two of three main arteries, was narrowed and severely diseased and a right artery was totally blocked. Sorensen was taken directly to an operating room for 5-vessel bypass surgery. On February 22, 1994, Sorensen submitted a claim for medical benefits. The City denied the claim. On review, a hearing officer upheld the denial of benefits, but an appeals officer reversed. The appeals officer concluded both that Sorensen qualified for the conclusive presumption of coverage provided by NRS 617.457(1), and that he proved a causal connection between his heart disease and his employment. The district court denied the City's petition for judicial review, and the City appeals.

## DISCUSSION

NRS 617.358 requires a person seeking compensation for an occupational disease to establish by a preponderance of the evidence that the disease arose out of and in the course of employment. The legislature has created an exception to this requirement, however, for firefighters and police officers with heart disease when certain conditions are met. NRS 617.457 provides, in pertinent part:

> 1. Notwithstanding any other provisions of this chapter, diseases of the heart of a person who, for 5 years or more, has been employed in a full-time continuous, uninterrupted and salaried occupation as a fireman or police officer in this state before the date of disablement are conclusively presumed to have arisen out of and in the course of the employment.

The primary issue in these appeals is whether the presumption of NRS 617.457(1) applies to a firefighter who was once employed in the occupation on a full-time continuous, uninterrupted and salaried basis for five years or more, but is no longer so employed at the time of disablement.

The City contends NRS 617.457(1) is plain and unambiguous, and that these retired firefighters are not entitled to the presump-

tion because they were not employed as firefighters for nearly two years immediately preceding disablement. Pointing out that there would be coverage under the firefighters' interpretation of the statute for a firefighter who is employed when he is twenty and quits when he is twenty-five, then develops heart disease when he is sixty, the City asserts the legislature could not have intended that result. Thus, the City argues the statute should be read to require five years of service immediately preceding disablement.

The retired firefighters also contend the statute is plain and unambiguous, but they interpret it to mean that the presumption applies after retirement, as long as the conditions have all been met before the date of disablement. They point out there is no language in the statute requiring service "immediately preceding" the date of disablement, although the legislature clearly knows how to draft such a condition: a 1987 amendment to NRS 617.457 contained such language in its conditions of coverage, albeit in a different context, but a 1989 amendment deleted it.[2] The firefighters argue this court cannot insert words that the legislature chose to leave out.

Construction of a statute is a question of law, which we review de novo. NRS 233B.135(3)(d); State, Dep't of Mtr. Vehicles v. Lovett, 110 Nev. 473, 476, 874 P.2d 1247, 1249 (1994). When a statute is capable of two or more reasonable but inconsistent interpretations, it is ambiguous and we must determine what the legislature intended by its enactment. McKay v. Bd. of Supervisors, 102 Nev. 644, 649, 730 P.2d 438, 442 (1986). We conclude that NRS 617.457(1) is ambiguous; either of the proffered interpretations is a plausible reading of the requirement that the firefighter "for 5 years or more . . . has been employed . . . before the date of disablement."

In determining which interpretation is correct, we are guided by well-established principles of statutory construction. The leading rule is to ascertain the legislature's intent, and to accomplish that goal we may examine the context and spirit of the statute in question, together with the subject matter and policy involved. *Id.* at 650-51, 730 P.2d at 443. Our interpretation should be in line with what reason and public policy would indicate the legis-

---

[2]The statute was amended in 1987 to establish a presumption of coverage that could be rebutted by showing "that the person suffered from the same ailment sometime during the 5-year period *immediately preceding employment.*" (Emphasis added.) 1987 Nev. Stat., ch. 587, § 1, at 1424. The statute was amended in 1989 to create a conclusive presumption of coverage. 1989 Nev. Stat., ch. 480, § 2, at 1021.

lature intended, and should avoid absurd results. *Id.* at 649, 730 P.2d at 442; Moody v. Manny's Auto Repair, 110 Nev. 320, 325, 871 P.2d 935, 938 (1994).

The primary purpose of Nevada's workers' compensation laws is to provide economic assistance to persons who suffer disability or death as a result of their employment. SIIS v. Jesch, 101 Nev. 690, 693-94, 709 P.2d 172, 175 (1985). Though claimants must ordinarily establish a causal connection between their disability and their employment, the legislature has expanded occupational disease coverage for firefighters and police officers who develop certain diseases, such as heart disease, by relieving them from the burden of proving a causal connection between their employment and their disease.[3] The City asserts that medical experts disagree whether individuals in these occupations are at increased risk of developing heart disease, but it is not for us to weigh the medical evidence; the legislature has accepted the existence of such a causal connection and has incorporated it in NRS 617.457(1).

In considering whether these retired veteran firefighters are included within the scope of NRS 617.457(1), we find it helpful to trace the evolution of the statute from its initial form to its present form. When NRS 617.457(1) was enacted in 1969, it required a firefighter seeking coverage for occupational heart disease to prove total permanent or partial disability or death that was caused by extreme overexertion in times of stress or danger, and that arose out of and in the course of ten years or more of firefighting as an occupation.[4] NRS 617.457(1) was amended in 1973 to cover additional individuals whose occupations involve certain specified kinds of stresses and to reduce the minimum required period of employment to five years.[5] Additional amendments in 1981 and 1983 limited coverage to firefighters and police officers, but defined police officers in NRS 617.135 to include the individuals previously listed separately in NRS 617.457, and eliminated the requirement that disability be total.[6]

In 1987, the legislature reversed the burden of proof by revising NRS 617.457(1) to create a presumption that heart diseases of

---

[3]In addition to the heart disease statute at issue, NRS 617.455(5) creates a virtually identical conclusive presumption that lung diseases are occupational diseases of firefighters and police officers employed in their occupations for five years or more before disablement, and NRS 617.453 creates a rebuttable presumption that cancer is an occupational disease of firefighters.

[4]1969 Nev. Stat., ch. 340, § 1, at 592.

[5]1973 Nev. Stat., ch. 504, § 1, at 768.

[6]1981 Nev. Stat., ch. 339, § 2, at 623-24, and ch. 438, §§ 2 and 7, at 850-52; 1983 Nev. Stat., ch. 197, § 9, at 459.

firefighters and police officers, caused by exposure to noxious gases, fumes or smoke, or extreme overexertion, stress or danger and resulting in disability, are compensable unless it could be proved the person suffered from the ailment sometime during the five-year period immediately preceding employment.[7] Finally, in 1989, the legislature eliminated the list of causative factors and abandoned the rebuttable presumption in favor of the conclusive presumption found in the current version of NRS 617.457(1).[8]

Each amendment of the statute following its adoption thirty years ago has expanded, rather than limited, coverage for firefighters who develop heart disease. We conclude that it would be inconsistent with the purpose and history of NRS 617.457(1) to deny Gallagher and Sorensen, thirty- and thirty-five-year veterans of the Las Vegas Fire Department, the benefit of the statute's application because they did not discover their heart disease until some months after they retired. Given the language of the statute, and the spirit and policy behind it (and similar statutes) declaring certain diseases of firefighters and police officers to be presumptively occupation-related, the City's interpretation is unreasonable.[9]

In determining that Gallagher did not qualify for the statutory presumption, the district court also relied upon the NRS 617.457(3)[10] requirement that firefighters submit to annual physical examinations during their employment. The court concluded this "element of coverage" cannot "legally" be satisfied once a firefighter retires. The statute, however, merely requires annual exams during employment. The evidence shows that Gallagher did, in fact, "submit to a physical examination, including an examination of the heart, . . . on an annual basis during his employment" and thus satisfied the requirements of NRS 617.457(3).

## CONCLUSION

Because Gallagher and Sorensen were employed in full-time continuous, uninterrupted and salaried occupations as firefighters

---

[7]1987 Nev. Stat., ch. 587, § 1, at 1424.

[8]1989 Nev. Stat., ch. 480, § 2, at 1021.

[9]If the legislature believes some limitation is necessary, it may amend the statute to terminate application of the presumption at some definite point. *See* SIIS v. Jesch, 101 Nev. 690, 695 n.2, 709 P.2d 172, 176 n.2 (1985); NRS 617.453(3).

[10]NRS 617.457(3) reads: "Except as otherwise provided in subsection 4, each employee who is to be covered for diseases of the heart pursuant to the provisions of this section shall submit to a physical examination, including an examination of the heart, upon employment, upon commencement of coverage and thereafter on an annual basis during his employment."

in this state for more than five years before they were disabled, their heart diseases are conclusively presumed to have arisen out of and in the course of their employment. NRS 617.457(1). Gallagher and Sorensen are therefore entitled to occupational disease benefits as a matter of law. We need not decide whether substantial evidence supports the appeals officers' determinations that Gallagher did not, and that Sorensen did, prove a causal connection between disease and employment. Accordingly, we reverse the order in Gallagher's appeal, Docket No. 29354, and remand to the district court for further proceedings consistent with this opinion. We affirm the order in Sorensen's appeal, Docket No. 29615."

---

"THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this matter.