RYAN OSHUN MOORE, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 34939

July 25, 2001                                                    27 P.3d 447

*Michael R. Specchio*, Public Defender, *John Reese Petty*, Chief Deputy Public Defender, and *Cheryl D. Bond*, Deputy Public Defender, Washoe County, for Appellant.

*Frankie Sue Del Papa*, Attorney General, Carson City; *Richard A. Gammick*, District Attorney, and *Terrence P. McCarthy* and *Gary H. Hatlestad*, Deputy District Attorneys, Washoe County, for Respondent.

Before SHEARING, AGOSTI and ROSE, JJ.

## OPINION

*Per Curiam:*

To resolve this appeal, we must decide whether a sentence for the crime of conspiracy may be enhanced under NRS 193.165(1), the deadly weapon enhancement. We conclude that the district court erred by enhancing Moore's sentence because Moore did not "use" a deadly weapon to commit the crime of conspiracy as NRS 193.165(1) contemplates.

### FACTS

In February of 1998, Ryan Oshun Moore conspired with three others to rob the occupants of an apartment at gunpoint. While carrying out the armed robbery, one of the conspirators shot and killed a man who the conspirators believed was delivering drugs to the apartment. Tragically, the visitor was simply delivering food.

A jury found Moore guilty of (1) first-degree murder with the use of a deadly weapon, (2) robbery with the use of a firearm, and (3) conspiracy to commit robbery with the use of a firearm. The court sentenced Moore to life in prison with the possibility of parole after twenty years for murder, 72 to 180 months for rob-

bery, and 28 to 72 months for conspiracy, with the sentences for each charge to be served concurrently. For using a deadly weapon to commit the crimes charged, the district court enhanced Moore's sentence to equal, consecutive terms for each of the three crimes, including conspiracy. Thus Moore, who was a juvenile at the time these crimes were committed, will spend at least forty years in prison.

Moore now appeals.

## DISCUSSION

On appeal Moore contends, among other things, that the district court erred by applying the deadly weapon enhancement provided for in NRS 193.165(1) to his conspiracy conviction.

NRS 193.165(1) permits the sentencing judge to impose an equal, consecutive sentence if the defendant used a deadly weapon to commit the primary offense:

> [A]ny person who *uses a firearm or other deadly weapon . . . in the commission of a crime* shall be punished by imprisonment in the state prison for a term equal to and in addition to the term of imprisonment prescribed by statute for the crime. The sentence prescribed by this section runs consecutively with the sentence prescribed by statute for the crime.[1]

The operative word for this appeal is "uses." Moore specifically contends that the sentence enhancement was improper because he could not have "used" a weapon to commit the crime of conspiracy as the legislature intended us to read the term. The State concedes that it is quite unusual for a conspiracy charge to be enhanced, but offers a broad construction of "uses" to contend that the enhancement was proper.

The parties call upon this court to construe the language of NRS 193.165(1). Statutory construction is a question of law that we review independently.[2] In construing a statute, our primary goal is to ascertain the legislature's intent in enacting it, and we presume that the statute's language reflects the legislature's intent.[3] Thus, we first look to the plain language of the statute to decipher the statute's meaning.[4] But where the language of the statute cannot directly resolve the issue standing alone, we con-

---

[1]NRS 193.165(1) (emphasis added).

[2]*See Anthony Lee R., A Minor v. State*, 113 Nev. 1406, 1414, 952 P.2d 1, 6 (1997).

[3]*See id.*

[4]*See id.*

sider "the context and spirit of the statute in question, together with the subject matter and policy involved."[5] In addition, ambiguities in criminal liability statutes must be liberally construed in favor of the accused.[6]

The verb "use" connotes "to put into action or service" and "to carry out a purpose or action by means of."[7] In this sense, whether a criminal can "put" a deadly weapon "into action" to commit the crime of conspiracy depends on how we view conspiracy. The State argues that because conspiracy is a continuing offense under Nevada law,[8] a conspiracy sentence can be enhanced when a deadly weapon is used at any time during the continuation of the conspiracy.

The California Court of Appeal's decision in *People v. Becker* supports the State's view.[9] The *Becker* court concluded that California's arming enhancement applied to the crime of conspiracy, reasoning that "[s]o long as the defendant has a weapon available for use at any point during the course of a continuing offense, his sentence may be enhanced for being armed."[10]

But *Becker* does not persuade us. First, the language of California's arming enhancement is different; it applies to "any person who *is armed* with a firearm in the commission . . . of a felony."[11] Second and more importantly, California requires an overt act to complete the crime of conspiracy.[12] Thus in California, the firearm can be used during the overt act, the vital part of the conspiracy under California law.

In contrast to California, Nevada does not require an overt act.[13] Thus, the crime of conspiracy is completed when the unlawful agreement is reached.

The law in New Mexico is the same as in Nevada, and on this

---

[5]*Gallagher v. City of Las Vegas*, 114 Nev. 595, 599, 959 P.2d 519, 521 (1998).

[6]*See Sessions v. State*, 106 Nev. 186, 189, 789 P.2d 1242, 1243 (1990).

[7]*Merriam Webster Online Collegiate Dictionary at* http://www.m-w.com/cgi-bin/dictionary?use (last visited May 29, 2001).

[8]*See State v. Wilcox*, 105 Nev. 434, 435, 776 P.2d 549 (1989).

[9]83 Cal. App. 4th 294, 298 (2000).

[10]*See id.* at 298.

[11]California Penal Code § 12022(a)(1) (emphasis added).

[12]*See Becker*, 83 Cal. App. 4th at 297.

[13]*See* NRS 199.490 ("In any such proceeding for violation of NRS 199.480, it shall not be necessary to prove that any overt act was done in pursuance of such unlawful conspiracy or combination.").

basis the New Mexico Court of Appeals concluded in *State v. Padilla* that an "agreement is the gist of the crime of conspiracy," and therefore the "crime of conspiracy is not susceptible to a firearm enhancement."[14] The *Padilla* court's reasoning persuades us. Because an unlawful agreement is the essence of the crime of conspiracy and because in Nevada conspiracy is committed upon reaching the unlawful agreement, we conclude that Moore could not "use" a deadly weapon to commit the crime of conspiracy for purposes of the deadly weapon enhancement.

The State next urges us to recognize that there may be unusual circumstances in which deadly weapons may be "used" to conspire. For instance, in this case, the State speculates that the presence of the guns facilitated the reaching of an agreement to commit the crime because Moore and Morris amassed sufficient firepower to induce the other two men to enter the conspiracy. In other words, the State argues that the deadly weapon enhancement is proper if the conspirators would not have joined the conspiracy but for the availability of the weapons. We reject this strained argument and again agree with the *Padilla* court's reasoning on this point—"conspiracy is an initiatory crime which involves no physical act other than communication, [and thus] it is not conceivable to us how a firearm could be used in the commission of that offense."[15]

Following the plain import of the term "uses" in NRS 193.165(1), we conclude that it is improper to enhance a sentence for conspiracy using the deadly weapon enhancement. Accordingly, we reverse Moore's sentence in part and remand this case to the district court with instructions to vacate the second, consecutive term of Moore's sentence for conspiracy. We affirm Moore's conviction and sentence in all other respects.[16]

---

[14]*State v. Padilla*, 879 P.2d 1208, 1212 (N.M. Ct. App. 1994).

[15]*See id.*

[16]Moore's other contentions lack merit. First, we have reviewed the record and, in light of the totality of circumstances, conclude that Moore's confession was voluntary and admissible. *See Elvik v. State*, 114 Nev. 883, 891-92, 965 P.2d 281, 286-87 (1998) (setting forth the considerations relevant to review of the district court's conclusions regarding the voluntariness of a juvenile's confession). Second, the district court did not commit reversible error in giving a "Kazalyn instruction." *See Garner v. State*, 116 Nev. 770, 788-89, 6 P.3d 1013, 1025 (2000) (concluding that our holding in *Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000), does not apply retroactively).