MITCHELL ERIC DETTLOFF, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 39869

September 16, 2004                                         97 P.3d 586

*David M. Schieck,* Las Vegas, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *David J. Roger,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, and *Bruce W. Nelson,* Deputy District Attorney, Clark County, for Respondent.

Before ROSE, MAUPIN and DOUGLAS, JJ.

## OPINION

By the Court, MAUPIN, J.:

Appellant Mitchell Dettloff appeals from a judgment of conviction entered upon jury verdicts of guilty on three felony counts of leaving the scene of an accident.[1] As a threshold matter, we have determined to reverse and vacate two of the three convictions under our recent decision in *Firestone v. State*,[2] which prohibits multiple convictions in connection with leaving the scene of a single accident. We affirm the remaining conviction for the reasons set forth below.

In this appeal, we primarily consider the extent to which specific intent is a required element of the felony offense of leaving the scene of an accident. We also consider claims of alleged misconduct by the State before the grand jury, and claims concerning a defendant's prearrest silence, prearrest conduct and prearrest retention of counsel.

### *FACTS AND PROCEDURAL HISTORY*

This case involves a catastrophic multi-vehicle automobile accident on a divided interstate highway in Clark County, Nevada. The accident occurred on the evening of April 22, 2001, when Dettloff collided with a vehicle occupied by James, Holly and Benjamin Barton. The collision forced both vehicles across the median into oncoming traffic. In the resulting melee, two oncoming cars collided with the Barton vehicle, one of which was occupied by Brian Cooper. Tragically, Holly Barton, Benjamin Barton and Brian Cooper died at the scene, and James Barton sustained severe personal injuries. Meanwhile, although his vehicle sustained considerable damage, Dettloff managed to regain control and return to the

---

[1]*See* NRS 484.219(1), (3).

[2]120 Nev. 13, 83 P.3d 279 (2004).

proper lane of travel. He then proceeded to his destination without stopping to assist the other participants in the accident. Dettloff later claimed that he did not stop to render assistance because the dust generated by the vehicles obscured his rear vision, and that he thought the other vehicle was still in front of him. Accordingly, he initially thought that he, himself, was the victim of a hit-and-run accident.

Investigators quickly generated information implicating Dettloff as the missing motorist. At approximately 2:00 a.m. the following morning, Las Vegas Metropolitan Police Officer Robert Honea proceeded to Dettloff's residence and rang the doorbell. In response, Dettloff hid in the house with his children and fiancée until the officer left the area. Thereafter, Dettloff consulted his yellow pages, placed a call to Las Vegas criminal defense lawyer Mace Yampolsky, and arranged a meeting at Yampolsky's office later that morning. In an ill-fated attempt to avoid a confrontation with the media and to maintain control over communications between Dettloff and authorities, Yampolsky advised Dettloff to check into a hotel, speak to no one and await further instructions. Yampolsky's attempts at negotiating a surrender with the Clark County District Attorney failed, and the Clark County Detention Center refused to accept Dettloff's unilateral attempt to surrender because no outstanding warrants had been issued for his arrest. After obtaining arrest and search warrants, police eventually located and arrested Dettloff at his hotel.

The State filed a criminal complaint in the Las Vegas Justice Court, charging Dettloff with three counts of involuntary manslaughter, four counts of reckless driving and four counts of felony leaving the scene of an accident. Although the justice court set bail and scheduled a preliminary hearing date, the State elected to prosecute the case by way of grand jury indictment. In addition to the testimony of percipient witnesses and investigating officers, the State presented what later turned out to be false evidence before the grand jury. This included testimony that Dettloff went to a ''gentlemen's'' club after the accident, that he had been drinking heavily during the evening in question, that he stopped near the accident scene and yelled obscenities at the victims, and that his children were with him at the time of the accident. The State also presented evidence concerning the retention of Yampolsky, the upshot of which was that Dettloff had retained a lawyer who specialized in handling drunken driving cases rather than contact the police. It also provided the grand jury with personal information about the Barton family and copies of their funeral program. Finally, in addition to the instructions concerning the original charges, the State instructed the jury on extraneous offenses, including child endangerment, drunken driving, child abuse and neglect, and firearms

violations. All of this notwithstanding, the grand jury returned an indictment restricted to the original eleven charges.

Dettloff pleaded not guilty and filed a pretrial petition for a writ of habeas corpus, arguing that the State improperly attempted to obtain an overcharged indictment on inapplicable charges, *i.e.,* drunken driving, child abuse, child endangerment, and firearms violations; intentionally presented irrelevant and inflammatory evidence to the grand jury; and improperly sought a true bill on multiple counts of leaving the scene of a single accident.[3] The district court ultimately denied Dettloff's petition, stating that the State met its burden of eliciting slight or marginal evidence on the charges that resulted in the indictment.

At trial, the State abandoned much of the evidence presented to the grand jury based upon subsequent information that the evidence was untrue, unsupported or irrelevant. Thus, the State did not elicit proof at trial that Dettloff's children were with him when the accident occurred, that he had stopped to yell obscenities at the victims, that he went to a gentlemen's club after the accident, or that he had been drinking that evening. The district court rejected, in limine, Dettloff's request to present proof of the State's use of false evidence to secure the indictment. However, based upon another order in limine, the district court allowed Dettloff to present evidence describing his contacts with Yampolsky to establish that his avoidance of apprehension was incidental to the advice of counsel. The jury ultimately convicted Dettloff on three of the eleven charges, to wit: the three counts of leaving the scene of an accident that pertained to the Barton family, *i.e.,* Counts III, IV and V of the indictment.

The district court sentenced Dettloff to three concurrent terms of 48 to 120 months in the Nevada State Prison. The judgment entered by the court ordered Dettloff to pay $76,662.29 in restitution, fines of $2,000 on each count, and a $25 administrative assessment. The judgment also awarded Dettloff credit for 395 days of time served prior to the imposition of sentence, including time served on house arrest, and ordered genetic marker testing. Dettloff filed his timely notice of appeal.

## DISCUSSION

*Firestone v. State*

The parties agree that two of the three convictions must be vacated based upon our recent holding in *Firestone,* in which we held that "NRS 484.219 allows only one charge of leaving the

---

[3]*See infra* discussion of *Firestone.*

scene of a single accident, regardless of the number of victims."[4] Accordingly, we reverse and vacate the convictions entered in connection with Counts III and IV of the indictment. We now turn to Dettloff's other assignments of error, as they relate to the remaining conviction entered pursuant to Count V of the indictment.

*Specific intent under NRS 484.219*

Dettloff contends that, to sustain a felony conviction for leaving the scene of an accident, the State must prove beyond a reasonable doubt that the person was aware that the accident caused bodily injury or death. The construction of a statute is a question of law that we review de novo.[5] In determining the Legislature's intent in enacting a statute, we first look "to the plain language of the statute."[6] When the plain language of the statute is ambiguous, we consider "'the context and spirit of the statute in question, together with the subject matter and policy involved.'"[7] "In addition, ambiguities in criminal liability statutes must be liberally construed in favor of the accused."[8]

NRS 484.219, under which the State prosecuted Dettloff, provides in pertinent part:

1. The driver of any vehicle involved in an accident on a highway or on premises to which the public has access resulting in bodily injury to or the death of a person shall immediately stop his vehicle at the scene of the accident or as close thereto as possible, and shall forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of NRS 484.223.

. . . .

3. A person failing to comply with the provisions of subsection 1 is guilty of a category B felony . . . .

The district court instructed the jury that (1) a driver of a vehicle involved in an accident who knowingly fails to stop at the accident scene is guilty of leaving the scene of an accident, a felony; and (2) to find Dettloff guilty of leaving the scene of an accident, he must have known he was involved in an accident, but need not

---

[4]120 Nev. at 14, 83 P.3d at 280.

[5]*Moore v. State,* 117 Nev. 659, 661, 27 P.3d 447, 449 (2001).

[6]*Id.*

[7]*Id.* at 661-62, 27 P.3d at 449 (quoting *Gallagher v. City of Las Vegas,* 114 Nev. 595, 599, 959 P.2d 519, 521 (1998)).

[8]*Id.* at 662, 27 P.3d at 449.

have known that he had injured or killed someone.[9] Accordingly, the district court refused Dettloff's request to instruct the trial jury that felony convictions under NRS 484.219 are dependent upon proof that the defendant left the scene with actual or constructive knowledge that bodily injury or death occurred. In this, the district court explicitly concluded that such a knowledge requirement would "defeat the public interest, which is served by requiring persons involved in vehicle collisions to stop and provide identification and other personal information and to be available to render assistance if required." We agree.

Whether knowledge of injury is required to sustain a felony hit-and-run conviction is an issue of first impression for this court and is the subject of a nationwide split of authority. By way of example, the State of Washington requires proof of awareness of the accident itself, but does not require proof that the defendant was aware that others were injured or killed as a result of the accident.[10] California, on the other hand, requires proof under its hit-and-run statute that the accused had knowledge of the injuries sustained as a result of the accident, or that the accident was of such a magnitude that a person involved in it would reasonably anticipate that bodily injury or death had occurred.[11]

We hold that actual or constructive knowledge of injury or death is not an element of the felony offense of leaving the scene of an accident.[12] First, NRS 484.219 contains no such requirement. Second, to hold otherwise would encourage "hasty retreats" from accident scenes by at-fault or impaired drivers to avoid gaining knowledge that someone had been injured and, correspondingly, avoid criminal responsibility under the hit-and-run statute. Third, providing such a loophole to criminal liability under NRS 484.219 would provide additional incentive for persons involved in serious accidents to leave the scene to avoid other types of criminal liability, including drunken or reckless driving. In summary, with no incentive to stay at the scene to avoid a hit-and-run charge, the at-fault driver could achieve objectives inconsistent with the public interest by fleeing to avoid even more serious criminal liability. Given these policy considerations, the district court properly re-

---

[9]The district court adopted the reasoning of the Washington Supreme Court in *State v. Vela,* 673 P.2d 185, 188 (Wash. 1983), which holds that knowledge of an accident is all that is required to establish culpability under a hit-and-run statute, and that knowledge of injuries is not required.

[10]*See Vela,* 673 P.2d at 188.

[11]*People v. Holford,* 403 P.2d 423, 427 (Cal. 1965) ("criminal liability attaches to a driver who knowingly leaves the scene of an accident if he actually knew of the injury or if he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person").

[12]*See City of Spokane v. Carlson,* 979 P.2d 880, 884 (Wash. Ct. App. 1999) (" 'Knowledge of the accident is all the knowledge that the law requires.' " (quoting *Vela,* 673 P.2d at 188)).

fused Dettloff's proposed jury instructions interjecting a "knowl-edge of injury" requirement into NRS 484.219.

*Grand jury submissions*

Dettloff contends that the district court erred by denying his pre-trial petition for a writ of habeas corpus. Specifically, he alleges that the district court should have dismissed the grand jury indict-ment against him because it was based upon the State's admission of evidence designed solely to inflame the grand jury, to wit: fam-ily photographs of the victims, the funeral program, the false tes-timony described above, and statements concerning the retention of counsel in lieu of contacting police. He also argues that the grand jury instructions related to uncharged crimes further poisoned the grand jury deliberations.

The district court may grant a pretrial petition for a writ of habeas corpus where the prosecution acted in "a willful or con-sciously indifferent manner with regard to a defendant's procedural rights," or where the grand jury indicted the defendant on crimi-nal charges without probable cause.[13]

During grand jury proceedings, the State must elicit sufficient evidence demonstrating probable cause that a crime was commit-ted and that the accused was likely the perpetrator.[14] A grand jury indictment will be sustained where the State submits sufficient legal evidence to establish probable cause, even though inadmissi-ble evidence may have been offered.[15] Also, " '[t]he finding of probable cause may be based on slight, even "marginal" evi-dence, because it does not involve a determination of the guilt or innocence of an accused.' ''[16]

We reject Dettloff's attack upon his ultimate conviction based upon the grand jury proceedings. The State presented evidence to the grand jury that Dettloff was involved in the initial accident, that one person was seriously injured and three more killed, and that Dettloff fled the scene without stopping to make inquiries of any kind.[17] The grand jury instructions concerning other infractions of

---

[13]*Sheriff v. Roylance,* 110 Nev. 334, 337, 871 P.2d 359, 361 (1994).

[14]*Sheriff v. Miley,* 99 Nev. 377, 379, 663 P.2d 343, 344 (1983).

[15]*Sheriff v. Simpson,* 109 Nev. 430, 434-35, 851 P.2d 428, 431-32 (1993).

[16]*Id.* at 435, 851 P.2d at 432 (quoting *Sheriff v. Hodes,* 96 Nev. 184, 186, 606 P.2d 178, 180 (1980) (citations omitted)).

[17]Dettloff elicited evidence that he attempted to return to the scene but was turned away by a police official who was directing traffic. Because he did not attempt to stop and admit his involvement, he does not argue that this some-how affects his criminal culpability for leaving the accident scene.

the criminal code, the victim impact evidence, and the evidence that later turned out to be false did not prejudice Dettloff. First, as noted, the State presented a very strong case to the grand jury as to the charges upon which the jury finally convicted Dettloff; second, the grand jury did not expand the indictment beyond the original charges; third, the State ultimately abandoned the use of the false evidence at trial; fourth, with regard to the grand jury evidence that he retained counsel rather than contacting authorities, Dettloff himself introduced this evidence at trial in aid of his defense to the charges; fifth, the jury convicted Dettloff on only three of the original charges; and sixth, under *Firestone,* Dettloff will have sustained only a single conviction in connection with the accident. Finally, that the jury convicted Dettloff under a higher burden of proof cured any irregularities that may have occurred during the grand jury proceedings.[18] We therefore conclude that the district court properly denied Dettloff's pretrial petition for a writ of habeas corpus.

*Rejection of Dettloff's offer of proof concerning the State's use of false testimony to procure indictment*

Dettloff claims that his convictions should be reversed because of the district court's refusal to allow him to introduce, at trial, the State's use of false evidence before the grand jury. Dettloff sought introduction of this evidence to demonstrate the State's changes in position during the case, and to establish the State's desperation to prosecute him. We reject this claim on appeal on several grounds. First, the State ultimately abandoned any reliance on the false evidence after receiving information that undermined its validity. Second, although grand jury revelations caused the defense to expend considerable resources to disprove the allegations, we cannot conclude that the use of the evidence at the grand jury proceedings amounted to misconduct. Third, Dettloff cannot demonstrate prejudice from the ruling because the trial jury cleared Dettloff of all but the hit-and-run charges, charges that were clearly proved by Dettloff's failure to stop for an obviously serious traffic accident. Fourth, the district court could reasonably conclude that introduction of the State's use of false evidence before the grand jury would simply involve a confusing and undue consumption of trial

---

[18]*Echavarria v. State,* 108 Nev. 734, 745, 839 P.2d 589, 596 (1992); *see also id.* at 745 n.4, 839 P.2d at 596 n.4 ("The Supreme Court has suggested that a jury verdict of guilty may render harmless an error in the grand jury proceedings. *See United States v. Mechanik,* 475 U.S. 66, 71-73 (1986). *See also Sheriff v. Keeney,* 106 Nev. 213, 216, 791 P.2d 55, 57 (1990) (substantial prejudice to defendant must be demonstrated before the province of the grand jury); *People v. Towler,* 641 P.2d 1253 (Cal. 1982) (defendant must show actual prejudice to reverse a grand jury indictment on appeal)").

time.[19] Thus, we cannot conclude that the district court abused its discretion in refusing this offer of proof.[20]

*Prearrest silence and retention of counsel*

Dettloff seeks reversal based upon the State's references before the grand jury, and during trial, to his prearrest silence and retention of counsel. More particularly, he attacks the State's use of evidence concerning his decision to consult with counsel before speaking with police, and to ultimately follow his counsel's advice not to speak with the authorities. He argues that these references implicate his Fifth and Sixth Amendment rights as applied to the states through the Fourteenth Amendment.

With regard to the claims that the State improperly injected Dettloff's retention of counsel in the grand jury proceedings, consistent with our rulings above, we conclude the ultimate conviction on Count V cured any errors at the indictment stage of the proceedings. Thus, we need only reach Dettloff's argument regarding evidence presented at trial.

Dettloff argues with great force that the State improperly raised his prearrest silence on the advice of counsel in its case-in-chief and during its cross-examination of Dettloff, and thus placed in issue the inference that his exercise of his right to counsel equated to his consciousness of guilt. We disagree. First, Dettloff himself raised his prearrest silence and retention of counsel during his opening statement.[21] Second, as discussed below, Dettloff further developed the issues during his cross-examination of State witnesses, including his former spouse and Officer Honea, and during the presentation of his defense case. In this, both Dettloff and Yampolsky testified concerning their interactions following the first confrontation with police. The defense obviously embraced this strategy, that he sought the succor of counsel rather than report the matter to police, to justify his failure to respond to the initial attempt by police to contact him at his residence, his continuing refusal to report the matter and his evasion of apprehension, and to counter the State's claims in that regard.

Evidence that Dettloff hid from police and failed to contact authorities upon learning of the severity of the accident placed his consciousness of guilt in issue, and underscored his failure to stop as required.[22] That he retained counsel and elected to remain silent

---

[19]*See* NRS 48.035.

[20]*Sherman v. State,* 114 Nev. 998, 1006, 965 P.2d 903, 909 (1998).

[21]As noted, Dettloff received permission to delve into his prearrest retention of counsel pursuant to an order in limine issued by the district court.

[22]*See Santillanes v. State,* 104 Nev. 699, 701, 765 P.2d 1147, 1148 (1988) (holding that jury could infer defendant's consciousness of guilt based upon

during the period prior to his arrest did not render his prearrest silence inadmissible, particularly when his defense team used the retention of counsel affirmatively to mitigate his actions after the accident. Going further, Dettloff could not avoid references to his retention of counsel when they dovetailed with evidence that he was evading capture. Dettloff, however, points to his cross-examination by the State:

> Q: Sir, your testimony today has essentially been you thought, at worst you were involved in a little fender-bender.
>
> If the police come knocking at your door, why would you be afraid to answer the door?
>
> A: Because, at the time that my wife woke me up, she was explaining the severity of it and I just couldn't comprehend that I could have been involved with something that severe.
>
> And if I was involved in something that severe, which I was still in disbelief about, that I needed to contact an attorney and have him advise me as to what I should do.
>
> Q: So you'd rather contact an attorney than contact the police or go back to the scene and tell the police: Hey, I had a little piece of this; or: Whatever happened here involved me? Or to check on the victims? Yes or No?
>
> A: My choice at the time was to call the attorney and not talk to the police.

This dialogue did little more than repeat and reiterate Dettloff's direct examination testimony that he chose to seek counsel, rather than turn himself in to authorities.

The State did present police witnesses during its case-in-chief who, in describing the attempts to secure Dettloff's arrest, testified to Dettloff's refusal during direct telephonic contact with officers and through intermediaries to surrender or talk to authorities based upon advice of counsel. We conclude that this evidence comprised part of the body of proof that Dettloff failed to stop as required after the accident, that his failure to report his involvement continued after he became aware of the severity of the accident, and that he had evaded apprehension. Going further, the State's evidence in this regard was not introduced until after Dettloff obtained permission from the district court to develop the issue, discussed it in his opening statement and cross-examined his former spouse and Officer Honea on the point. Thus, we also conclude that Dettloff

---

prosecutor's comments regarding defendant's failure to attend meetings with the police); *Turner v. State,* 98 Nev. 103, 106, 641 P.2d 1062, 1064 (1982) ("A defendant's conduct, such as flight from a scene of the crime, generally is considered a party admission, and will be admitted if the actions have probative value.").

placed his prearrest silence and retention of counsel in issue as part of his defense.

Because Dettloff's prearrest silence was admissible to attack his credibility,[23] because he relied upon his retention of counsel to bolster his defense, and because the retention of counsel was factually intertwined with the attempts to secure Dettloff's apprehension, no Fifth or Sixth Amendment violation occurred. Additionally, the evidence of which Dettloff now complains added little to that actually introduced by the defense on these issues.

We recognize Dettloff's right to hire counsel at any time and that the State may not refer in its case-in-chief to retention of counsel as, in and of itself, evidence of consciousness of guilt.[24] We also recognize that Dettloff's relationship with Yampolsky was of a confidential nature. But again, Dettloff himself raised his failure to contact authorities and his retention of counsel after the confrontation with police during his opening statement and examination of witnesses, including Yampolsky and Dettloff. At trial, Dettloff also expressly waived, on the record, any attorney-client privilege relating to his interactions with Yampolsky. Accordingly, the State was permitted to explore this evidence on cross-examination of Dettloff and his other witnesses.[25] The State was entitled to confront that testimony, undermine its implications and reiterate testimony favorable to its theory of the case.

---

[23]*See Jenkins v. Anderson,* 447 U.S. 231, 238 (1980) ("Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility."); *see also Angle v. State,* 113 Nev. 757, 763 n.2, 942 P.2d 177, 181 n.2 (1997) (prosecutor's remark regarding defendant's prearrest silence was proper); *Murray v. State,* 113 Nev. 11, 17 n.1, 930 P.2d 121, 125 n.1 (1997) (prosecutor's comment on defendant's prearrest silence was not improper).

[24]*See State v. Marshall,* 586 A.2d 85, 148 (N.J. 1991) ("a prosecutor's statement suggesting that retention of counsel is inconsistent with innocence impermissibly infringes on a defendant's constitutional right to counsel"). We note that the State committed misconduct in its closing rebuttal argument when it equated Dettloff's retention of counsel with consciousness of guilt. Because this allusion was brief and because the charge upon which Dettloff will remain convicted was clearly proved by his absence from the accident scene, reversal of the remaining conviction is not required. *See Chapman v. California,* 386 U.S. 18, 23 (1967); *Marshall,* 586 A.2d at 149 (comment by prosecutor was harmless beyond a reasonable doubt where defendant testified that he had retained counsel and evidence of guilt was so persuasive that error could not have "contributed significantly to the jury's determination of guilt").

Dettloff's arguments do not implicate the Fifth and Sixth Amendment cases governing the right to counsel during custodial interrogation and after formal charges have been filed. *See Silva v. State,* 113 Nev. 1365, 1370, 951 P.2d 591, 594 (1997); *Coleman v. State,* 109 Nev. 1, 4, 846 P.2d 276, 278 (1993); *Brewer v. Williams,* 430 U.S. 387, 398 (1977); *Kaczmarek v. State,* 120 Nev. 314, 326-27, 91 P.3d 16, 25 (2004). Those rights had not attached during the prearrest confrontations described above.

[25]*See Marshall,* 586 A.2d at 149.

## CONCLUSION

Following *Firestone,* we reverse and remand this matter for entry of an amended judgment vacating the convictions and sentences entered in connection with Counts III and IV of the indictment. Based upon the conclusions reached above in connection with Dettloff's other claims on appeal, we affirm the judgment entered upon Count V.[26]

ROSE and DOUGLAS, JJ., concur.

[26]We have considered Dettloff's other contentions on appeal and conclude that they lack merit.