129 Nev., Advance Opinion 89

IN THE SUPREME COURT OF THE STATE OF NEVADA

BENJAMIN JAMES CLANCY,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 59571



FILED

NOV 27 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of leaving the scene of an accident. Eighth Judicial District Court, Clark County; Doug Smith, Judge.

*Affirmed.*

The Weiner Law Group, LLC, and Jason G. Weiner and Nathan Sosa, Las Vegas,
for Appellant.

Catherine Cortez Masto, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Jonathan E. VanBoskerck, Chief Deputy District Attorney, Clark County,
for Respondent.

BEFORE HARDESTY, PARRAGUIRRE and CHERRY, JJ.

*OPINION*

By the Court, PARRAGUIRRE, J.:

In Nevada, a driver who has been involved in an accident must stop and remain at the scene until he has provided certain

3/10/14: Corrected per letter to publishers. CJ

13-35849

information and rendered reasonable assistance to any person injured in the accident. NRS 484E.010-.030. If the accident resulted in bodily injury or the death of a person, a driver's failure to stop and remain at the scene is a felony. NRS 484E.010(3). In this appeal, we must determine whether the State is required to prove that the driver had knowledge that he had been involved in an accident. Holding that such knowledge is required and that the knowledge may be actual or constructive, we conclude that sufficient evidence was presented to support the jury's finding that appellant knew or should have known that he was involved in an accident before leaving the scene. Thus, we affirm the judgment of conviction.

## FACTS

Appellant Benjamin Clancy was charged with a felony for leaving the scene of an accident that resulted in bodily injury. The accident involved a vehicle driven by Clancy and a motorcycle operated by Barry Robinson. Robinson was traveling southbound on Interstate 15 through Las Vegas early in the morning with his girlfriend, Erica Norris, as a passenger. A vehicle merged in front of him and struck the front tire or fender of his motorcycle, causing him to lose control. Robinson and Norris fell off the motorcycle, which hit the center divider and then skidded across the freeway, stopping in the far right emergency lane.

A passenger in a minivan traveling ahead of Robinson's motorcycle witnessed the accident. Diane Camacho saw a silver SUV strike Robinson's motorcycle and then accelerate, overtaking the minivan on the right side. Camacho saw the driver of the SUV, whom she later identified as Clancy, looking in the rearview mirror and over his shoulder at the crash behind him. The silver SUV exited the freeway at the next off-ramp but did not pull over. Camacho dialed 911 and gave the dispatcher the license plate number for the silver SUV.

Nevada Highway Patrol Trooper George Thaw arrived on scene to conduct an investigation. After taking photographs of the motorcycle, he interviewed Robinson and Norris in the hospital while waiting for his dispatcher to run the plate numbers taken by Camacho. Thaw learned that the silver SUV belonged to Clancy, and he drove to Nellis Air Force Base, where Clancy was stationed, to question him. While there, he inspected Clancy's car and saw damage to the vehicle's right rear panel, which Thaw estimated was the same height as the front fender of Robinson's motorcycle. Thaw arrested Clancy for leaving the scene of an accident that resulted in bodily injury to a person. Clancy denied having any knowledge of the accident.

At trial, Clancy called an accident reconstruction specialist as an expert witness. Based on scrutiny of the two vehicles and the nature of the markings on Clancy's SUV, the defense expert opined that there was no evidence of a collision between Clancy's SUV and Robinson's motorcycle. The State did not call an expert to rebut this testimony, but it did cross-examine the defense expert as to whether there could have been contact between the two vehicles that could have resulted in the motorcycle's crash without causing significant damage to the SUV.

At the close of evidence, Clancy argued in favor of a jury instruction stating: "You must find Defendant not guilty of Leaving the Scene of an Accident unless you find that the Defendant had *actual knowledge* of the accident at the time it occurred." (Emphasis added.) The district attorney, however, sought the following instruction: "In order to find the Defendant guilty of Leaving the Scene of an Accident, you must find that the Defendant *knew or should have known* that he had been involved in an accident prior to leaving the scene of that accident."

(Emphasis added.) The court ultimately adopted the district attorney's proposed instruction. The jury returned a guilty verdict.

## DISCUSSION

On appeal, Clancy argues that the district court abused its discretion by instructing the jury that it must find that a defendant knew or should have known that he was involved in an accident in order to find the defendant guilty of leaving the scene of an accident because actual knowledge is required. We disagree and hold that NRS 484E.010 requires the State to prove that the driver either knew or should have known that he was involved in an accident. We further conclude that NRS 484E.010's phrase "involved in an accident" is not unconstitutionally vague or ambiguous and that the evidence presented at trial was sufficient to support the jury's guilty verdict.

*NRS 484E.010 requires knowledge that an accident occurred*

The district court has broad discretion in determining the appropriate jury instructions. *Cortinas v. State*, 124 Nev. 1013, 1019, 195 P.3d 315, 319 (2008). We have declined to disturb a district court's refusal of a jury instruction absent an abuse of discretion or judicial error. *Id.* The question presented is whether the defense instruction on knowledge should have been given because it was a correct statement of the law. *See Nay v. State*, 123 Nev. 326, 330, 167 P.3d 430, 433 (2007) ("[T]he defendant 'is not entitled to an instruction which incorrectly states the law or that is substantially covered by other instructions.'" (quoting *Barnier v. State*, 119 Nev. 129, 133, 67 P.3d 320, 322 (2003))). We review de novo whether an instruction is a correct statement of the law. *Id.*

To determine whether the defense instruction was a correct statement of the law, we must look to the statute defining the offense. NRS 484E.010 provides in pertinent part:

1. The driver of any vehicle involved in an accident on a highway or on premises to which the public has access resulting in bodily injury to or the death of a person shall immediately stop his or her vehicle at the scene of the accident or as close thereto as possible, and shall forthwith return to and in every event shall remain at the scene of the accident until the driver has fulfilled the requirements of NRS 484E.030.

. . . .

3. A person failing to comply with the provisions of subsection 1 is guilty of a category B felony . . . .

The statute does not contain any express language regarding the driver's knowledge that he had been involved in an accident. Because strict liability offenses generally are disfavored, the simple omission of appropriate terminology does not end our inquiry. *See Ford v. State*, 127 Nev. ___, ___, 262 P.3d 1123, 1127 (2011) ("many 'cases interpret[ ] criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them'" (alteration in original) (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 70 (1994))). Our primary goal in construing a statute is to ascertain the Legislature's intent in enacting it. *Moore v. State*, 117 Nev. 659, 661, 27 P.3d 447, 449 (2001). "[W]here the language of the statute cannot directly resolve the issue standing alone, we consider the context and spirit of the statute in question, together with the subject matter and policy involved." *Id.* at 661-62, 27 P.3d at 449 (internal quotations and citations omitted).

The purpose behind NRS 484E.010 is to require drivers involved in an accident to stop and provide identifying information and render reasonable assistance to injured persons for the benefit of any person who may have been injured in the accident. *See generally State v.*

Supreme Court
OF
Nevada

(O) 1947A

*Feintuch*, 375 A.2d 1223 (N.J. Super. Ct. App. Div. 1977) (discussing purpose of offense of leaving the scene of an accident). It imposes an affirmative course of action on the driver. *State v. Wall*, 482 P.2d 41, 45 (Kan. 1971). "Implicit therein must be the element of recognition or awareness on the part of that driver of the fact of [an accident]." *Id.* The statute's purpose is not served where the driver is unaware of the event requiring him to stop and provide identifying information and render assistance—the accident. In that situation, the statute does nothing to encourage the driver to stop and provide information and render assistance; the driver did not stop because he was not aware that there was a reason to do so. As the Washington Supreme Court has observed in addressing this issue, "It is inconceivable that the legislature intended that punishment would be imposed for failure to follow the course of conduct outlined [stop, exchange information, and render aid], if the operator of the vehicle was ignorant of the happening of an accident." *State v. Martin*, 440 P.2d 429, 436 (Wash. 1968). Rules of statutory construction require us to avoid such an absurd result. Accordingly, we construe NRS 484E.010(1) to require proof of knowledge of involvement in an accident.[1]

---

[1]We acknowledge that we have declined to impose a similar knowledge requirement with respect to the bodily-injury-or-death element of the statute. *Dettloff v. State*, 120 Nev. 588, 594, 97 P.3d 586, 590 (2004) (holding that "actual or constructive knowledge of injury or death is not an element of the felony offense of leaving the scene of an accident"). There is good reason for this distinction. As explained in this opinion, omitting a knowledge requirement as to the accident element would defeat the purpose of the statute. In contrast, adding a knowledge requirement as to the bodily-injury-or-death element would defeat the purpose of the statute because doing so would encourage drivers involved in an accident to leave

*continued on next page...*

Having concluded that knowledge of involvement in an accident is required for criminal liability under NRS 484E.010, we must determine whether that knowledge must be actual knowledge. We agree with the State that actual knowledge need not be proven to satisfy the knowledge requirement.[2] Imposing an actual knowledge requirement would encourage drivers not to stop so as to avoid gaining actual knowledge of an accident or to avoid further criminal liability, which defeats the purpose of the statute. *Cf. Dettloff v. State*, 120 Nev. 588, 594, 97 P.3d 586, 590 (2004) (declining to require knowledge of injury). In contrast, focusing on whether the driver knew or should have known that he was involved in an accident is more consistent with the duty to stop and render aid imposed by NRS 484E.030. The Kansas Supreme Court, for example, provides a sound rationale for adopting such a standard:

---

*...continued*

the scene in order to avoid gaining any knowledge of potential injury or death or to avoid an arrest for other crimes, such as driving under the influence. *Id.*

[2]Clancy suggests that we approved of an actual knowledge instruction in *Dettloff*. In that case, we merely observed that the district court had instructed the jury that "to find Dettloff guilty of leaving the scene of an accident, he must have known he was involved in an accident." 120 Nev. at 593, 97 P.3d at 589. Our opinion does not reproduce the exact language of the instruction. Even assuming that the instruction required actual knowledge that Dettloff was involved in an accident, our decision in that case does not address whether that part of the instruction was a correct statement of the law. We were asked to determine whether the instruction was a correct statement of the law to the extent that it did not require knowledge of injury, and we addressed the instruction only as to that issue. *Id.* at 593-95, 97 P.3d at 589-90.

 

> Direct evidence of absolute, positive, subjective knowledge may not always be obtainable. We think it *sufficient if the circumstances are such as to induce in a reasonable person a belief that collision has occurred*; otherwise a callous person might nullify the humanitarian purpose of the statute by the simple act of immediate flight from an accident scene without ascertaining exactly what had occurred.

*State v. Wall*, 482 P.2d 41, 45 (Kan. 1971) (emphasis added).

Accordingly, we conclude that the jury instruction given by the district court correctly informed the jury to determine whether Clancy knew or should have known that he was involved in an accident, and therefore the district court did not abuse its discretion by giving that instruction.

*NRS 484E.010 is not unconstitutionally vague or ambiguous*

Clancy argues that the phrase "involved in an accident" in NRS 484E.010(1) is unconstitutionally vague or ambiguous because it is not clear whether the phrase requires actual contact with the vehicle, or also includes a motorcycle swerving to avoid a vehicle without any physical contact.

We review the constitutionality of a statute de novo, presuming that a statute is constitutional. *State v. Castaneda*, 126 Nev. ___, ___, 245 P.3d 550, 552 (2010). The party challenging a statute's constitutionality "has the burden of making a clear showing of invalidity." *Id.* (internal citations and quotations omitted). A statute is unconstitutionally vague "(1) if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited'; or (2) if it 'is so standardless that it authorizes or encourages seriously discriminatory enforcement.'"

*Id.* at ___, 245 P.3d at 553 (quoting *Holder v. Humanitarian Law Project*, 561 U.S. ___, ___, 130 S. Ct. 2705, 2718 (2010)).

Although the constitutionality of the phrase "involved in an accident" as used in NRS 484E.010(1) has never been addressed in Nevada, a number of other jurisdictions have determined that very similar language is not vague or ambiguous. In *State v. Carpenter*, 334 N.W.2d 137 (Iowa 1983), the Iowa Supreme Court held that such language was not vague or ambiguous because such terms were easily defined by reference to their common dictionary definitions. *Id.* at 139-40. The Texas Court of Appeals has held the same. *Sheldon v. State*, 100 S.W.3d 497, 500-01 (Tex. Ct. App. 2003)).

The word "accident" is commonly defined as "[a]n unintended and unforeseen injurious occurrence." *Black's Law Dictionary* 16 (9th ed. 2009). Webster's Dictionary defines "involve" as "to draw in as a participant" or "to require as a necessary accompaniment." *Webster's Third New International Dictionary* 1191 (3d ed. 2002). These definitions do not require direct physical impact between two vehicles in order to be "involved in an accident." Other jurisdictions have concluded that similar language does not require actual contact between vehicles. *See, e.g.*, *People v. Kroncke*, 83 Cal. Rptr. 2d 493, 501 (Ct. App. 1999) (interpreting "accident" as used in California's hit-and-run statute broadly to include a passenger jumping out of a moving car); *State v. Carpenter*, 334 N.W.2d 137, 140 (Iowa 1983) ("[Iowa's hit-and-run] statute does not require a collision between the driver's vehicle and another vehicle or person" in order to be deemed to have been "involved" in an "accident"); *State v. Hughes*, 907 P.2d 336, 339 (Wash. Ct. App. 1995) ("[W]e conclude the Legislature did not intend that the duty to stop, identify and render aid in

an injury accident be interpreted so narrowly as to attach only to the driver of a vehicle which collided with another.").

Applying the dictionary definition of the words "involved" and "accident," and following the construction of such language as used by other jurisdictions in their hit-and-run statutes, we conclude that NRS 484E.010 gives fair notice of what is prohibited and does not encourage discriminatory enforcement, thus is not unconstitutionally vague. *See Castaneda*, 126 Nev. at ___, 245 P.3d at 553.

*Evidence was sufficient to support the verdict*

Next, we address Clancy's argument that the evidence at trial was insufficient to establish that a collision actually occurred or that Clancy knew that there had been an accident.

In reviewing the sufficiency of evidence, this court determines whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008). "This court will not reweigh the evidence or evaluate the credibility of witnesses because that is the responsibility of the trier of fact." *Id.*

At trial, Camacho, the witness in the vehicle in front of Clancy and Robinson, stated that she saw Clancy's silver SUV strike Robinson's motorcycle. On cross-examination, Clancy attempted to show that from the angle Camacho viewed the vehicles, she could not have seen the rear corner of Clancy's SUV and only inferred that the SUV actually made contact with the motorcycle. Another witness, Cary Pierce, was driving behind Robinson at the time of the accident and saw a light-colored SUV or van make contact with Robinson's motorcycle. Pierce, distracted by the

motorcycle crash, was unable to positively identify the vehicle he saw strike the motorcycle.

Clancy's expert testified that the marks on Clancy's car are not consistent with such an accident. However, the State's cross-examination attempted to raise the possibility that the nature of the particular accident could have resulted in minimal markings on Clancy's SUV.

As we have concluded, actual physical contact between two vehicles is not required for a person to be involved in an accident under NRS 484E.010. Accordingly, Camacho's observation that Clancy merged into Robinson's motorcycle immediately followed by the motorcycle crashing, Pierce's observation from behind that a light-colored vehicle actually struck the motorcycle, and Robinson's observation that a vehicle actually struck his motorcycle provide sufficient evidence for a jury to find beyond a reasonable doubt that Clancy's SUV was involved in an accident with Robinson's motorcycle, even if Clancy's expert raised doubts about whether actual contact between the vehicles occurred. *See Mitchell*, 124 Nev. at 816, 192 P.3d at 727.

The State's evidence was also sufficient to support the jury finding that Clancy either knew or should have known that an accident occurred. Specifically, Camacho testified that immediately following Robinson's crash, she saw Clancy looking over his shoulder and at his rearview mirror before he accelerated away and exited the freeway at the next off-ramp, despite having entered the freeway just over a mile earlier and still being well short of Nellis Air Force Base, his destination. Thus, we hold that sufficient evidence supported the jury's guilty verdict.

Accordingly, we affirm the judgment of conviction entered by the district court.

_____Parra_____, J.
Parraguirre

We concur:

_____Hardesty_____, J.
Hardesty

_____Cherry_____, J.
Cherry