RAMIN ZABETI, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 41152

September 3, 2004                                    96 P.3d 773

---

[Rehearing denied October 5, 2004]

*Goodman & Chesnoff* and *David Z. Chesnoff* and *Richard A. Schonfeld,* Las Vegas; *William B. Terry,* Las Vegas, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *David J. Roger,* District Attorney, *James Tufteland,* Chief Deputy District Attorney, and *Cheryl L. Kosewicz,* Deputy District Attorney, Clark County, for Respondent.

Before ROSE, MAUPIN and DOUGLAS, JJ.

## OPINION

*Per Curiam:*

Appellant Ramin Zabeti was convicted of one count of possession of a controlled substance. Zabeti contends that the district court erred in concluding that a district court judge from one county can issue a search warrant to be executed in another county.[1] Zabeti also contends that the district court erred in denying his motion to suppress evidence discovered at his residence after the police failed to physically knock on his door before entering to conduct a search. We reject Zabeti's contentions.

### FACTS

The State filed an indictment against Zabeti for possession of a controlled substance with the intent to sell. Following a jury trial, the jury convicted Zabeti of the lesser-included offense of possession of a controlled substance. The district court sentenced Zabeti to two years in prison, but granted probation.

On May 2, 2001, a White Pine County district court judge signed a search warrant authorizing the police to search Zabeti's residence, located in Clark County, at 3331 Ceremony Drive, Las Vegas, Nevada. The district court authorized the search warrant to further an investigation regarding the crime of furnishing a controlled substance to a state prisoner. The police executed the search warrant on May 4, 2001. Zabeti filed a motion to suppress the evidence seized during the search and requested an evidentiary hearing. Zabeti alleged that the search warrant was illegal because the

---

[1]Zabeti also raises the following issues in this appeal: (1) the district court erred in denying his petition for a writ of habeas corpus because the charges the State filed against Zabeti in White Pine County, which were later dismissed, are the same charges the State filed against Zabeti in this case; (2) the district court erred in denying his petition for a writ of habeas corpus because the State declined to present exculpatory evidence at the grand jury proceeding; (3) the district court erred in denying Zabeti treatment under NRS 453.3363(1); (4) the district court erred in denying Zabeti's petition for a writ of habeas corpus because the grand jury was not provided with sufficient evidence to indict Zabeti for possession of a controlled substance with the intent to sell; and (5) the district court erred in failing to address every issue raised in Zabeti's petition for a writ of habeas corpus. We conclude that these arguments lack merit.

White Pine County district court judge lacked jurisdiction to issue a search warrant to be executed in Clark County and because the police failed to knock and announce their entry before entering Zabeti's residence.

The district court heard arguments on Zabeti's motion to suppress and concluded that the White Pine County district court judge properly exercised jurisdiction to issue a search warrant to be executed in another jurisdiction. Additionally, the district court granted Zabeti an evidentiary hearing on the State's failure to knock and announce.

During the evidentiary hearing, Officer Darrell Hixson[2] testified that the search warrant for Zabeti's residence was classified by the SWAT team as a high-risk warrant due to the prior arrests of Zabeti and his brother, Paymen Zabeti, who both lived at the residence. Officer Hixson testified that Paymen's prior arrests included charges for drawing a firearm, resisting arrest, and carrying a concealed weapon. Zabeti's prior arrests included charges for assault with a deadly weapon, battery, resisting a police officer, and giving false information to a police officer. Officer Hixson also testified that the SWAT team classified the search of Zabeti's residence as a high-risk search because the house had two stories, enabling occupants to "have high ground" on SWAT officers or team members.

Officer Hixson testified that the SWAT team executed the search warrant during the daytime and that there were seventeen SWAT officers involved. When the police arrived at Zabeti's residence, Zabeti was standing outside with another individual. Officer Hixson testified that an officer handcuffed Zabeti and the other individual and that neither Zabeti nor the other individual attempted to enter the residence.

When the police officers approached the front door to Zabeti's residence, Officer Hixson testified that he and the other police officers announced: "Police officer search warrant." Officer Hixson stated that he and the other officers were speaking loud enough for individuals inside the residence to hear them. After the police announced their presence, Hixson testified that the officers waited "no more than 10 seconds" before entering the residence. Officer Hixson admitted that his police report stated the officers waited either 4 to 10 seconds or 5 to 10 seconds.

Officer Hixson admitted that prior to arriving at the residence, the officers planned to knock on the door and to wait no longer than 15 seconds. Officer Hixson testified that the decision to wait only 10 seconds and not to knock on the door was based on

---

[2]Darrell Hixson is an officer from the Las Vegas Metropolitan Police Department and is assigned to the SWAT section. The SWAT section serves high-risk search warrants.

Zabeti's and Paymen's prior arrests, "the layout of the house," Zabeti's and the other individual's presence outside the residence, the open garage door, and the daylight hour. Officer Hixson explained that when a suspect with a prior arrest record similar to Paymen's lives in a two-story house, there is concern that it would be easy for the suspect to shoot from the top story of the residence down on the officers. Officer Hixson also explained that the open garage door presented a high risk to officer safety because there are more obscured angles from which a suspect inside the garage could shoot an officer. Officer Hixson testified that the officers found no individuals inside Zabeti's residence.

The district court held that, under the totality of the circumstances, the police officers did not violate NRS 179.055.[3]

## DISCUSSION

[Headnote 1]

Zabeti contends that the district court erred in concluding that a White Pine County district judge had jurisdiction to issue a search warrant to be executed in Clark County. We disagree.

[Headnotes 2-5]

"Statutory construction is a question of law" that we review de novo.[4] In determining the Legislature's intent in enacting a statute, we first look "to the plain language of the statute."[5] When the plain language of the statute is ambiguous, we consider " 'the context and spirit of the statute in question, together with the subject matter and policy involved.' "[6] "In addition, ambiguities in criminal liability statutes must be liberally construed in favor of the accused."[7]

NRS 179.025 provides that "[a] search warrant authorized by NRS 179.015 to 179.115, inclusive, may be issued by a magistrate of the State of Nevada."[8] The statutory construction of NRS 179.025 is an issue of first impression for this court.

NRS 179.025 is similar to a statutory provision from Indiana. In *Brannon v. State,* the Indiana Court of Appeals, interpreting their

---

[3]The district court referred to NRS 175.055, which does not exist, but it appears the court meant to refer to NRS 179.055 because NRS 179.055(1) grants officers the authority to break down a door if "after notice of his authority and purpose, he is refused admittance."

[4]*Moore v. State,* 117 Nev. 659, 661, 27 P.3d 447, 449 (2001).

[5]*Id.*

[6]*Id.* at 661-62, 27 P.3d at 449 (quoting *Gallagher v. City of Las Vegas,* 114 Nev. 595, 599, 959 P.2d 519, 521 (1998)).

[7]*Id.* at 662, 27 P.3d at 449.

[8]NRS 179.015 to NRS 179.115 provide the law with regard to search warrants.

statute, noted that "although some jurisdictions limit magistrates to their own territorial jurisdiction with regard to issuance of search warrants, our controlling statute specifically states that a search warrant issued by a court of record may be executed 'anywhere in the state.' "[9] NRS 179.025 does not specifically limit a search warrant to be issued and executed in the same county. In addition, NRS 3.220 provides that "[t]he district judges shall possess equal coextensive and concurrent jurisdiction and power. They each shall have power to hold court in any county of this state." Therefore, we conclude that the district court did not err in concluding that a White Pine County district court judge could properly exercise jurisdiction to issue a search warrant to be executed in Clark County.

[Headnote 6]

Zabeti also contends that the district court erred in denying Zabeti's motion to suppress the evidence seized during the search of his residence. Specifically, Zabeti contends that the police officers' announcement—"Police officer search warrant"—before entering his residence is a violation of 18 U.S.C. § 3109, NRS 179.055, and the Fourth Amendment to the United States Constitution because the police never physically knocked on the door. Zabeti also contends that the police officers' decision to wait no more than 10 seconds before entering the residence provided an insufficient amount of time. We disagree with Zabeti's contentions.

[Headnote 7]

We review a district court's decision to suppress evidence under an abuse of discretion standard.[10] The Fourth Amendment provides that the people are protected against unreasonable searches and seizures by law enforcement.[11] 18 U.S.C. § 3109 provides that in executing a search warrant, a police officer "may break open any outer or inner door or window of a house, or any part of a house, or anything therein . . . if, after notice of his authority and purpose, he is refused admittance."[12] Nevada has codified § 3109 at NRS 179.055.[13]

---

[9]801 N.E.2d 750, 751 (Ind. Ct. App. 2004) (quoting Ind. Code Ann. § 35-33-5-7 (Lexis 1998)).

[10]*See Lambert v. State,* 94 Nev. 68, 71, 574 P.2d 586, 587 (1978) (holding that the trial court did not abuse its discretion in denying defendant's motion to suppress identification testimony).

[11]U.S. Const. amend IV; *see also* Nev. Const. art. 1, § 18.

[12]18 U.S.C. § 3109 (2000).

[13]NRS 179.055(1) provides: "The officer may break open any outer or inner door or window of a house, or any part of the house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."

[Headnote 8]

The United States Supreme Court has interpreted § 3109 and held that the ''common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment.''[14] The totality of the circumstances must be considered when deciding whether a search was reasonable.[15] In *Richards v. Wisconsin,* the United States Supreme Court held that in order for a ''no-knock'' search to be reasonable, ''the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime.''[16] The Supreme Court has also held that a 15-to-20-second wait after police officers announced their presence was reasonable under the Fourth Amendment and § 3109.[17]

[Headnote 9]

Here, the police officers knew that Zabeti and Paymen had prior arrests, and they observed the open garage door and the two-story residence. This information led the officers to reasonably believe that if they physically knocked on the door, and prolonged the delay before entering, the officers' safety could be compromised. The officers executing the warrant did verbally announce their presence by stating, ''Police officer search warrant'' in a loud voice and waited less than 10 seconds before entering. We have held that such an announcement satisfies the ''knock and announce'' requirements of NRS 179.055.[18] Given the exigent circumstances, we conclude that the verbal announcement in this case complied with the law. And, although we acknowledge that entering the residence less than 10 seconds after the officers announced their presence was a very brief period of time, we conclude it was sufficient given the concerns for officer safety.[19] Therefore, under the totality of the circumstances, the district court did not abuse its discretion in denying Zabeti's motion to suppress.

---

[14]*Wilson v. Arkansas,* 514 U.S. 927, 929 (1995).

[15]*United States v. Banks,* 540 U.S. 31, 41 (2003).

[16]520 U.S. 385, 394 (1997).

[17]*Banks,* 540 U.S. at 33.

[18]*See King v. State,* 116 Nev. 349, 358, 998 P.2d 1172, 1177 (2000) (concluding that the police did not violate NRS 179.055 by failing to knock prior to entering the premises after stating, ''Police officer. Search warrant,'' given the valid concerns for officer safety).

[19]*See U.S. v. Fox,* 790 F. Supp. 1487, 1498 (D. Nev. 1992) (concluding that based on the police officers' reasonable basis for believing that compliance with the ''knock and announce'' provisions of NRS 179.055 would have placed them in danger, their noncompliance was justified).

## CONCLUSION

For the reasons stated herein, we affirm Zabeti's judgment of conviction. However, after a review of the record, we noticed a clerical error. The judgment of conviction states that Zabeti was convicted pursuant to a guilty plea, when, in fact, he was convicted pursuant to a jury verdict. Therefore, we remand this case to the district court for the limited purpose of entering a corrected judgment of conviction.