MARTIN, J., delivered the opinion of the court, in which GRIFFIN, J., joined. COOK, J. (pp. 581-88), delivered a separate dissenting opinion.
OPINION
BOYCE F. MARTIN, JR., Circuit Judge.
Warden Thomas L. Simpson appeals from a district court judgment granting in part Robert Keith Woodall’s petition for a *577 writ of habeas corpus filed under 28 U.S.C. § 2254. Woodall is a Kentucky prisoner under sentence of death. Woodall cross-appeals the part of the judgment denying his remaining claims. Woodall pled guilty to capital murder, capital kidnapping, and first-degree rape. After a penalty trial, the trial court adopted the recommendation of the jury and sentenced Woodall to death on the murder conviction and life imprisonment for the remaining convictions. Woodall unsuccessfully appealed his sentence to the Kentucky Supreme Court and then filed a writ of habeas corpus in federal district court. The district court granted Woodall’s petition for a writ of habeas corpus because the trial court denied him his Fifth Amendment right against self-incrimination and made a constitutional error during jury selection. For the following reasons, the judgment of the district court is AFFIRMED.
I.
The facts of this case have been set forth by the Kentucky Supreme Court, Woodall v. Commonwealth, 63 S.W.3d 104, 114 (Ky.2001), and need not be restated in detail. The victim was a sixteen-year-old female. On January 25, 1997, the night of the murder, she left her family home between 7:30 p.m. and 8:00 p.m., heading to a nearby convenience store. When she had not returned home several hours later, her family contacted the police. The victim’s unclothed body was found floating in a lake, about one-half mile from the convenience store. Her throat had been slashed twice and her windpipe was totally severed; officials determined the actual cause of death to be drowning.
Woodall pled guilty to capital murder, capital kidnaping, and first-degree rape. At the penalty trial, Woodall cross-examined each of Kentucky’s eleven witnesses and called fourteen of his own witnesses who testified about Woodall’s life and upbringing. Woodall did not testify and requested that the trial judge instruct the jury that it should not draw any adverse inference from his decision not to testify. The trial judge concluded that Woodall was not entitled to the requested instruction, determining that, by entering a guilty plea, Woodall had waived his right to be free from self-incrimination. The jury recommended that Woodall be sentenced to death for the murder of the victim. The jury recommended that Woodall be punished to two consecutive life sentences for the kidnaping and rape. The trial court adopted these recommendations.
On direct appeal, the Kentucky Supreme Court affirmed Woodall’s convictions and sentences, with two justices dissenting. Id. at 134-35. Woodall filed a motion for relief from judgment and a motion to vacate his sentence. The trial court denied both motions and the Kentucky Supreme Court affirmed those decisions. Woodall v. Commonwealth, No. 2003-SC-000475-MR, 2005 WL 3131603 (Ky. Nov. 23, 2005); Woodall v. Commonwealth, No. 2004-SC-0931-MR, 2005 WL 2674989 (Ky. Oct. 20, 2005).
In 2006, Woodall filed his section 2254 petition in federal court. The district court granted habeas relief for two of Woodall’s thirty claimed grounds for relief; the court denied Woodall’s remaining claims as meritless. Specifically, the district court granted Woodall’s petition for habeas on his claim that the trial court violated his Fifth Amendment right against self-incrimination by failing to instruct the jury to draw no adverse inference from Woodall’s decision not to testify, despite Woodall’s request for such an instruction. The district court also found that the trial court violated Woodall’s Fifth, Eighth, and Fourteenth Amendment rights during jury selection when the trial court allowed Ken *578 tueky to use a peremptory challenge to strike an African-American member of the jury without holding a hearing pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The warden appeals both of these decisions. Woodall appeals the district court’s denial of his claim that the trial court improperly instructed the jury that they had to find any mitigating circumstances unanimously, and the district court’s denial of his motion for the appointment of a mental retardation expert. Because the failure to instruct the jury that it could not draw an adverse inference from Woodall’s decision not to testify was a violation of Woodall’s Fifth Amendment rights, and because we are in “grave doubt as to the harmlessness” of this violation’s impact on the jury’s decision to sentence Woodall to death, see O’Neal v. McAninch, 513 U.S. 432, 445, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995), we affirm the district court’s grant of the writ of habeas on this basis and do not reach the other questions presented in this appeal.
II.
When considering a petition for a writ of habeas corpus under the Antiterrorism and Effective Death Penalty Act of 1996, this Court may not grant the writ unless it finds that the state court’s decision was (1) “contrary to, or involved an unreasonable application of, clearly established Federal law,” or (2) “based on an unreasonable determination of the facts in light of the evidence presented.” 28 U.S.C. § 2254(d); see also Ruelas v. Wolfenbarger, 580 F.3d 403, 408 (6th Cir.2009). Under the “contrary to” clause, a federal habeas court may grant the writ “if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court on materially indistinguishable facts.” Boykin v. Webb, 541 F.3d 638, 642 (6th Cir.2008) (citing Williams v. Taylor, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the “unreasonable application” clause, “a federal habeas court may grant the writ if the state court identifies the correct legal principle from the Supreme Court’s decisions but unreasonably applie[d that principle to] the petitioner’s case.” Id.
The warden challenges the district court’s grant of habeas corpus based on the district court’s conclusion that the state courts unreasonably applied clearly established federal law. Woodall’s principal argument is that the state court violated his Fifth Amendment right against self-incrimination when it refused to give a requested jury instruction that the jurors draw no adverse inference from his decision not to testify.
 The Fifth Amendment, made applicable to the states through the Fourteenth Amendment, “forbids either comment by the prosecution on the accused’s silence or instructions by the court that such silence is evidence of guilt.” Griffin v. California, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The Supreme Court has concluded that the Fifth Amendment requires a trial judge to give a “no adverse inference” instruction when requested by a defendant during the guilt phase of a trial. See Carter v. Kentucky, 450 U.S. 288, 303, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981) (“No judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can, and must, if requested to do so, use the unique power of the jury instruction to reduce that speculation to a minimum.”). In Estelle v. Smith, the Supreme Court held that a defendant’s entitlement to the Fifth Amendment’s protection against self-in *579 crimination extends from the guilt phase to the penalty phase of a bifurcated capital trial. 451 U.S. 454, 462-63, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (“We can discern no basis to distinguish between the guilt and penalty phases of respondent’s capital murder trial so far as the protection of the Fifth Amendment privilege is concerned.”). More recently, in Mitchell v. United States, the Supreme Court held that the “rule against negative inferences at a criminal trial applies] with equal force at sentencing,” even where a defendant has pled guilty. 526 U.S. 314, 329, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999); id. at 326, 119 S.Ct. 1307 (‘Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony.”).
We are faced with the question of whether Woodall has a clearly established constitutional right to a requested “no adverse inference” instruction during the penalty phase of a capital trial where he declined to testify. “The rule against adverse inferences is a vital instrument for teaching that the question in a criminal case is not whether the defendant committed the acts of which he is accused. The question is whether the Government has carried its burden to prove its allegations while respecting the defendant’s individual rights.” Id. at 330, 119 S.Ct. 1307. Woodall’s Fifth Amendment rights survived his guilty plea, id. at 326, 119 S.Ct. 1307, and he was entitled to receive a “no adverse inference” instruction once he requested it. Cf. Finney v. Rothgerber, 751 F.2d 858, 863-64 (6th Cir.1985) (finding that the “due process clause requires a trial court, if requested, to instruct the jury during the enhancement portion of a bifurcated trial of one charged as a persistent felony offender that no adverse inference may be drawn from the defendant’s failure to testify”).
We agree with the district court that reading Carter, Estelle, and Mitchell together, the only reasonable conclusion is that the trial court violated Woodall’s Fifth Amendment rights by refusing to give a requested “no adverse inference” instruction. The Kentucky Supreme Court’s denial of this constitutional claim was an unreasonable application of Carter, Estelle, and Mitchell. See Williams, 529 U.S. at 407, 120 S.Ct. 1495 (“[A] state-court decision [is] an unreasonable application of [the Supreme] Court’s precedent if the state court ... unreasonably refuses to extend [a legal] principle to a new context where it should apply.”); Mason v. Mitchell, 543 F.3d 766, 772 (6th Cir.2008) (“Clearly established law ... encompasses more than just bright-line rules laid down by the Supreme Court. It also clearly includes legal principles and standards enunciated in the Court’s decisions.” (alterations and internal quotation marks omitted)). The district court held that a capital defendant has a Fifth Amendment right to a “no adverse inference” instruction during the sentencing phase of a trial, even if guilt has already been established through a plea agreement. We agree. “Given the gravity of the decision to be made at the penalty phase, the State is not relieved of the obligation to observe fundamental constitutional guarantees.” Estelle, 451 U.S. at 463, 101 S.Ct. 1866. At stake in the penalty phase of a capital trial such as Woodall’s is not only what specific punishment the defendant will receive, but whether he will be put to death. The due process clause requires that a trial court, if requested by the defendant, instruct the jury during the penalty phase of a capital trial that no adverse inference may be drawn from a defendant’s decision not to testify.
The warden argues that any error resulting from the district court’s fail *580 ure to give a “no adverse inference” instruction was harmless because it did not have a substantial and injurious effect or influence on the sentence of this ease. For purposes of federal habeas corpus review, a constitutional error that implicates trial procedures is considered harmless unless it had a “substantial and injurious effect or influence in determining the jury’s verdict.” Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted); Doan v. Carter, 548 F.3d 449, 459 (6th Cir.2008); see also Stewart v. Erwin, 503 F.3d 488, 501 n. 5 (6th Cir.2007) (applying the harmless error standard to constitutional errors in sentencing). “Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in ‘actual prejudice.’ ” Brecht, 507 U.S. at 637, 113 S.Ct. 1710. To determine the effect of an error, the court must determine “whether the [outcome that was] actually rendered in this trial was surely unattributable to that error.” Doan, 548 F.3d at 459 (internal quotation marks omitted). The Supreme Court has observed that “it is arguable that a refusal to give'[a ‘no adverse inference’ instruction] can never be harmless.” Carter, 450. U.S. at 304, 101 S.Ct. 1112 (declining to reach the question because it was not then presented and had not been before the state court); see also Lakeside v. Oregon, 435 U.S. 333, 340 & n. 10, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978) (discussing the likelihood that a jury will draw an adverse inference from a defendant’s decision not to testify). “The Supreme Court has emphasized ... that when a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief.” Erwin, 503 F.3d at 501 (internal quotation marks omitted). “[G]rave doubt” means “that, in the judge’s mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.” O’Neal, 513 U.S. at 435, 115 S.Ct. 992; see also id. at 437-38, 115 S.Ct. 992 (“[I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.”).
The warden argues that any error in the court’s failure to instruct the jury was harmless because of the overwhelming evidence of Woodall’s guilt presented during the penalty phase and the overwhelming evidence of the heinousness of the crimes, and because Woodall admitted the statutory aggravators necessary to impose the death penalty. If it were the case that a finding of the existence of statutory aggravators compels the imposition of the death penalty, then perhaps the trial court’s error would have been “harmless.” But the finding of the aggravating circumstances did not compel the jury to recommend a death sentence: the jury could have rejected the death penalty even if it found the existence of aggravating circumstances beyond a reasonable doubt. See Skaggs v. Parker, 235 F.3d 261, 271 (6th Cir.2000) (describing the variety of mitigating circumstances that a jury can consider during a penalty phase under Kentucky law). Because we cannot know what led the jury to make the decision that it did, and because the jury may well have based its decision on Woodall’s failure to testify, we cannot conclude that this is a case of “harmless error.” See Carter, 450 U.S. at 304, 101 S.Ct. 1112 (noting that it is “arguable” that refusing to give a “no adverse inference instruction” is “never” harmless); Ullmann v. United States, 350 U.S. 422, 426, 76 S.Ct. 497, 100 L.Ed. 511 (1956) (“Too *581 many, even those who should be better advised, view this privilege as a shelter for wrongdoers. They too readily assume that those who invoke it are either guilty of crime or commit perjury in claiming the privilege.”); see also Bruno v. United States, 308 U.S. 287, 294, 60 S.Ct. 198, 84 L.Ed. 257 (1939). Indeed, the trial court itself appears to have drawn an adverse inference from Woodall’s decision not to testify: in denying the requested instruction, the trial court stated that it was “aware of no case law that precludes the jury from considering the defendant’s lack of explanation of remorse or explanation of the crime or anything else once guilt has been adjudged in sentencing.” The trial court’s own inferences illustrate our concern. Given our grave doubt that the jury’s recommendation was not influenced by adverse inferences drawn from Woodall’s decision not to testify, we “cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.” O’Neal, 513 U.S. at 437, 115 S.Ct. 992 (internal quotation marks omitted). Under these circumstances, “it is impossible to conclude that the substantial rights were not affected.” Id. at 437-38, 115 S.Ct. 992 (internal quotation marks omitted). Therefore, under O’Neal, we treat the error as harmful and grant Woodall’s petition on this basis. See Jensen v. Romanowski, 590 F.3d 373, 381 (6th Cir.2009) (applying O’Neal where the court could not “be certain that the error had ‘no or small effect’ on the jury’s verdict” and had “ ‘grave doubt’ that the error was harmless”). Because the violation of Woodall’s substantial rights requires issuance of the writ, we do not address — or pass judgment upon — the other claims at issue in this appeal.
III.
For the foregoing reasons, the judgment of the district court is AFFIRMED. We REMAND with instructions to conditionally grant the writ unless the State of Kentucky elects to initiate resentencing proceedings within 180 days of the district court’s order.