**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| RYAN OSHUN MOORE, *Petitioner-Appellee*, <br><br> v. <br><br> DON HELLING; NEVADA ATTORNEY GENERAL, *Respondents-Appellants*. | No. 12-15795 <br><br> DC No. 3:05 cv-0348 KJD-VPC <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, District Judge, Presiding

Argued and Submitted
March 14, 2014—San Francisco, California

Memorandum Disposition Filed: March 24, 2014
Petition for Rehearing Granted and
Memorandum Disposition Withdrawn: July 3, 2014
Opinion Filed August 15, 2014

Before: Jerome Farris, A. Wallace Tashima,
and M. Margaret McKeown, Circuit Judges.

Opinion by Judge Tashima

# SUMMARY[*]

## Habeas Corpus

The panel reversed the district court's grant of Ray Oshun Moore's habeas corpus petition challenging his Nevada conviction of first degree murder, and remanded with directions to enter judgment for the state, in a case in which the trial court gave a "*Kazalyn* instruction," which did not separately define the terms "willful," "deliberate," and "premeditated."

After Moore was convicted, but before his conviction became final, the Nevada Supreme Court in *Byford v. State*, 994 P.2d 700, 713-15 (Nev. 2000), invalidated the *Kazalyn* instruction and replaced it with an instruction separately defining "willful," "deliberate," and "premeditated." The Nevada Supreme Court subsequently determined that *Byford* represented a change in Nevada law and was applicable to cases pending on direct appeal when *Byford* was decided. In *Babb v. Lozowsky*, 719 F.3d 1019 (9th Cir. 2013), which involved a habeas claim by a petitioner who was convicted of first degree murder under the *Kazalyn* instruction and whose conviction was not final when *Byford* was decided, this court held that the Nevada state court's failure to apply the new *Byford* instruction was an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1). After this court filed a Memorandum Disposition affirming the grant of Moore's petition in substantial reliance on *Babb*, the Supreme Court decided *White v. Woodall*, 134 S. Ct. 1697

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

(2014), which clarified § 2254(d)(1)'s "unreasonable application" clause.

The panel held that *Woodall*'s clarification of the unreasonable-refusal-to-extend rule is "clearly irreconcilable" with *Babb*'s conclusion that the Nevada Supreme Court unreasonably applied Supreme Court precedent by failing to apply a change in state law to Babb's pending conviction, and that *Woodall* thus effectively overruled *Babb* with respect to petitioners for whom, like Babb, the relevant state court decision pre-dated *Bunkley v. Florida*, 538 U.S. 835 (2003) (directing the lower court to determine whether a potentially exonerating change in state law had occurred before the defendant's conviction became final, and holding that the state court was required to apply that change to the defendant's conviction if it found in the affirmative).

Under *Woodall*, the panel concluded that the state court did not unreasonably apply clearly established federal law in denying Moore's *Byford* claim, and for that reason reversed the district court's grant of Moore's petition.

---

### COUNSEL

Catherine Cortez Mastro, Attorney General of Nevada, Robert E. Wieland (argued), Senior Deputy Attorney General, Reno, Nevada, for Respondents-Appellants.

Rene L. Valladares, Federal Public Defender, Debra A. Bookout and Ryan Norwood (argued), Assistant Federal Public Defenders, Las Vegas, Nevada, for Petitioner-Appellee.

---

## OPINION

TASHIMA, Circuit Judge:

Petitioner-Appellee Ryan Oshun Moore was convicted in Nevada state court of first degree murder, defined in relevant part as a "willful, deliberate and premeditated killing." Nev. Rev. Stat. § 200.030(1)(a) (2013), and other crimes. The trial court gave the first degree murder instruction commonly used in Nevada at the time, known as the "*Kazalyn* instruction,"[1] which did not separately define the terms "willful," "deliberate," and "premeditated." In 2000, after Moore was convicted, but before his conviction became final, the Nevada Supreme Court invalidated the *Kazalyn* instruction and replaced it with an instruction separately defining the terms "willful," "deliberate," and "premeditated." *See Byford v. State*, 994 P.2d 700, 713–15 (Nev. 2000). The Nevada Supreme Court subsequently determined that *Byford* represented a change in Nevada law and was applicable to cases pending on direct appeal when *Byford* was decided. *See Nika v. State*, 198 P.3d 839, 859 (Nev. 2008) (citing *Byford*, 994 P.2d at 713–15).

Moore argued on direct appeal that his conviction was invalid due to the trial court's use of the *Kazalyn* instruction, but his appeal was denied. *Moore v. State*, 27 P.3d 447, 450 n.16 (Nev. 2001). Moore then filed a petition for a writ of habeas corpus in the U.S. District Court for the District of Nevada, contending, among other things, that his due process rights were violated by the trial court's use of the *Kazalyn* instruction. The district court granted Moore's petition, *Moore v. Helling*, 861 F. Supp. 2d 1195, 1207–08 (D. Nev.

---

[1] *Kazalyn v. State*, 825 P.2d 578 (Nev. 1992).

2012), and Respondents-Appellants Don Helling, Warden, and the Nevada Attorney General (the "State") appealed.

On March 24, 2014, we filed a Memorandum Disposition affirming the district court's grant of Moore's petition. *Moore v. Helling*, 2014 WL 1152588 (9th Cir. Mar. 24, 2014). In that disposition, we relied substantially on *Babb v. Lozowsky*, 719 F.3d 1019 (9th Cir. 2013), which also involved a habeas claim by a petitioner who was convicted of first degree murder under the *Kazalyn* instruction and whose conviction was not final when *Byford* was decided. *Moore*, 2014 WL 1152588, at *1 (citing *Babb*, 719 F.3d at 1032–33). *Babb* held that the Nevada state court's failure to apply the new *Byford* instruction in such circumstances was an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1). *Babb*, 719 F.3d at 1032–33. We held in *Moore*, following *Babb* as controlling Circuit authority, that the Nevada state court's failure to apply the new *Byford* instruction to Moore's appeal was an unreasonable application of clearly established federal law. *Moore*, 2014 WL 1152588, at *1.

On April 7, 2014, the State filed a petition for panel rehearing and rehearing en banc. Dkt. # 50. While the State's petition for rehearing was pending, the U.S. Supreme Court decided *White v. Woodall*, 134 S. Ct. 1697 (2014), which clarified § 2254(d)(1)'s "unreasonable application" clause. In light of *Woodall*, we granted the State's petition for panel rehearing and withdrew our March 24, 2014 Memorandum Disposition. Dkt. # 52. We now reverse the district court's judgment and remand. We hold that *Babb*'s application of § 2254(d)(1) is "clearly irreconcilable" with *Woodall*, as applied to petitioners in Moore's position and is therefore no longer controlling in this case. *See Miller v.*

*Gammie*, 335 F.3d 889, 892–93 (9th Cir. 2003) (en banc). Under *Woodall*, we conclude that the state court did not unreasonably apply clearly established federal law in denying Moore's *Byford* claim and, for that reason, reverse the district court's grant of Moore's petition for a writ of habeas corpus.

## I.

## A.

Moore participated in a robbery during which his co-defendant, Charles Morris ("Morris"), shot and killed Branson Clark ("Clark"). Moore, Morris, and two others planned to rob the occupants of an apartment in Reno, Nevada. The four planned to wait outside the apartment building until someone entered the unit they intended to rob, at which point they would enter the unit and steal money and drugs that they believed the occupants of the unit possessed.

While the four were waiting outside the apartment, one of them observed Clark enter the unit carrying bags. At that point, they decided to rob Clark when he left the unit. When Clark exited the unit, Morris followed Clark around the apartment building, and Moore followed Morris. While Moore was following Morris, he saw Morris aim his gun and then, apparently when Morris was no longer in view, heard four gunshots. Moore then rounded the corner of the building, saw Morris running, and took off running himself.

Clark, who was a delivery driver at a local restaurant and went to the apartment complex to deliver a food order, was killed. His wounds were consistent with rifle shots, and there were two weapons recovered at the scene, an assault rifle and a semiautomatic pistol, both of which belonged to Moore.

After the robbery, Moore gave a lengthy statement to the police, in which he admitted to his involvement in the robbery and described the details explained above, but claimed that he did not shoot Clark. The State charged Moore with first degree murder, robbery, and conspiracy to commit robbery.

The prosecution asserted four theories of first degree murder: premeditated and deliberate murder by means of violence to a person; felony murder; aiding and abetting another in premeditated and deliberate murder; and premeditated and deliberate murder as a result of a conspiracy to commit robbery. As to premeditated and deliberate murder by means of violence to a person, the trial court gave the *Kazalyn* instruction. On September 24, 1999, the jury returned a general verdict in which it convicted him of first degree murder, robbery, and conspiracy.

**B.**

In 2000, after Moore was convicted but before his conviction became final, the Nevada Supreme Court decided *Byford*, which invalidated the *Kazalyn* instruction. The Nevada Supreme Court concluded that the instruction improperly blurred the distinction between first and second degree murder by failing to provide an independent definition of "deliberation," which is required for first, but not second, degree murder. *Byford*, 994 P.2d at 713. It therefore set forth new instructions to be used for first degree murder based on a willful, deliberate, and premeditated killing, which defined each of those three terms separately. *Id.* at 714. Eight years later, the Nevada Supreme Court determined that *Byford* represented a change in Nevada law that narrowed the scope of criminal conduct constituting first degree murder and, for

that reason, was applicable to cases pending on direct appeal when *Byford* was decided. *Nika*, 198 P.3d at 849–50.

Moore's appeal was pending when *Byford* was decided. In his direct appeal, he argued, in relevant part, that his first degree murder conviction should be reversed due to the trial court's use of the *Kazalyn* instruction. The Nevada Supreme Court rejected the *Byford* claim in a footnote. *Moore*, 27 P.3d at 450 n.16. In his federal habeas petition, Moore again raised the *Byford* claim, arguing that the use of the *Kazalyn* instruction violated his due process rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments. The district court granted Moore relief on this ground, *Moore*, 861 F. Supp. 2d at 1207–08, and the State appealed.

## II.

This Court reviews a district court's decision to grant or deny a habeas petition *de novo*. *Aguilar v. Woodford*, 725 F.3d 970, 972 (9th Cir. 2013). Under 28 U.S.C. § 2254(d), a habeas petitioner whose claim was adjudicated on the merits in state court may obtain relief in federal court only if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Section 2254(d)(1)'s clearly established phrase refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (citation and internal quotation marks omitted).

## III.

As we explained in the now-withdrawn memorandum disposition, under *Babb*, Moore would have been entitled to relief pursuant to § 2254(d)(1). We now hold, however, that in light of the Supreme Court's recent decision in *Woodall*, *Babb* no longer controls the outcome of this case. After *Woodall*, we can no longer conclude that the Nevada court's failure to apply *Byford* to Moore's conviction was contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)(1).

## A.

Before *Woodall*, this Circuit recognized two ways in which a petitioner could show an unreasonable application of federal law under § 2254(d)(1): first, "'if the state court identifie[d] the correct governing legal rule . . . but unreasonably applie[d] it to the facts'" of the case; and second,"'if the state court either unreasonably extend[ed] a legal principle from [Supreme Court] precedent to a new context where it should not apply or *unreasonably refuse[d] to extend* that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)

(emphasis added)).**²**    *Woodall* calls this last option the "unreasonable-refusal-to-extend concept" and circumscribes its use. *See Woodall*, 134 S. Ct. at 1705–07. According to *Woodall*, the Court never adopted or endorsed the unreasonable-refusal-to-extend rule (or at least never granted habeas relief on that basis).  The Court explained that, correctly interpreted, "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error."  *Id.* at 1706.  The Court noted that "'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

*Woodall* acknowledged that § 2254(d)(1) does not require an "'identical factual pattern before a legal rule must be applied.'" *Id.* (quoting *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007)).  But, it explained, a state court violates clearly established federal law by refusing to extend a principle to a new set of facts only if it is "'beyond doubt'" that the principle applies to the new situation.  *Id.* (quoting *Yarborough*, 541 U.S. at 666).  Therefore, "relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *Id*. at 1706–07 (quoting *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011)).

---

**²** Other circuits were in accord.  *See, e.g.*, *Allen v. Chandler*, 555 F.3d 596, 602 (7th Cir. 2009); *Green v. French*, 143 F.3d 865, 869–70 (4th Cir. 1998).

In *Woodall*, the Sixth Circuit had concluded that it was clearly established under a trio of Supreme Court cases that it was a violation of a defendant's Fifth Amendment right to fail to give a no-adverse-inference instruction at the penalty phase of a capital trial. 134 S. Ct. at 1702 (citing *Woodall v. Simpson*, 685 F.3d 574, 579 (6th Cir. 2012)). The Court rejected this conclusion, however, because no case had specifically held as much and the trio of cases on which the Sixth Circuit relied was amenable to multiple, reasonable interpretations. *Id.* at 1702–05. One case on which the Sixth Circuit relied held that a no-adverse-inference instruction is required at the guilt phase of a capital trial, *id.* at 1702 (citing *Carter v. Kentucky*, 450 U.S. 288, 294–95, 300 (1981)); another held that a defendant's Fifth Amendment right against self-incrimination is violated by the penalty-phase introduction of the results of an involuntary, un-Mirandized pretrial psychiatric evaluation, *id.* (citing *Estelle v. Smith*, 451 U.S. 454, 456–57 & n.1 (1981)); and the third disapproved of a trial judge drawing an "adverse inference from the defendant's silence at sentencing 'with regard to factual determinations respecting the circumstances and details of the crime,'" *id.* (quoting *Mitchell v. United States*, 526 U.S. 314, 327–30 (1999)). None of these cases, however, specifically held that the Fifth Amendment required a penalty-phase no-adverse-inference instruction. Nonetheless, the Sixth Circuit held that the principle was clearly established because "'reading *Carter*, *Estelle*, and *Mitchell* together, the only reasonable conclusion is that' a no-adverse-inference instruction was required at the penalty phase." *Id.* (quoting *Woodall*, 685 F.3d at 579).

The Court rejected this holding because, in its view, there were other reasonable conclusions to be drawn from *Carter*, *Estelle*, and *Mitchell*. *Id.* at 1702–03. The *Woodall* Court

specifically focused on *Mitchell*, because that was the case that was the most directly relevant to the question before the Court. It concluded that *Mitchell* left open the possibility that some adverse inferences were permissible at the penalty phase of a capital trial. The Court explained that while *Mitchell* might preclude a penalty-phase adverse inference as to guilt or the circumstances of the crime, it might be permissible under this precedent to draw from the defendant's silence conclusions about his lack of remorse or acceptance of responsibility. *Id.* at 1703 (noting that *Mitchell* separately reserved the question of whether silence may be used to assess remorse or acceptance of responsibility). The Court held that the Sixth Circuit's analysis "disregard[ed] perfectly reasonable interpretations of *Estelle* and *Mitchell* and hence contravene[d] § 2254(d)'s deferential standard of review." *Id*.

*Woodall* thus limits federal courts' ability to extend Supreme Court rulings to new sets of facts on habeas review. Under *Woodall*, courts may so extend Supreme Court rulings only if it is "beyond doubt" that the rulings apply to the new situation or set of facts. *Id.* at 1706. *Woodall* further held that it is beyond doubt that a ruling applies to a new set of facts only if there can be "no 'fairminded disagreement' on the question," *id.* (quoting *Harrington*, 131 S. Ct. at 787) – in other words, when the *one* – the *only* – reasonable inference to be drawn from the Court's precedent is that the principle applies to the new circumstance. According to *Woodall*, if there are *any* other reasonable inferences that can be drawn from the relevant precedent, the principle is not clearly established under § 2254(d). *See id.* at 1702–05.

**B.**

The issue is whether Babb relied on the unreasonable-refusal-to-extend rule the Court rejected in *Woodall*. In *Babb*, we were presented with the question of whether federal law requires that a change in state law, namely, the rejection of the *Kazalyn* instruction, must be applied to a conviction pending on direct appeal at the time of the change. 719 F.3d at 1023–25, 1032–33. There, we relied on § 2254(d)(1)'s unreasonable-refusal-to-extend concept to hold that the Nevada Supreme Court unreasonably applied clearly established federal law when it failed to apply the change announced in *Byford* to defendant Latisha Babb's conviction, which was pending on appeal when *Byford* was decided. 719 F.3d at 1032–33 (citing *Williams*, 529 U.S. at 407, for the proposition that an unreasonable refusal to extend constitutes an unreasonable application of Supreme Court precedent under § 2254(d)(1)).

When the state court ruled on Babb's *Byford* claim in 2001, no Supreme Court case had yet directly addressed the application of changes in state law to cases pending on appeal. However, we found the principle that changes in state law must be applied to convictions pending on direct appeal when the law is changed clearly established based on a pair of cases dealing with similar questions. The first of these, *Griffith v. Kentucky*, 479 U.S. 314 (1987), held that newly declared constitutional rules must be applied to convictions that are not final when the new rule is announced. *Id.* at 328.

We recognized in *Babb* that *Griffith* alone did not clearly establish the principle that changes in state law apply to cases pending on direct appeal, largely because *Griffith* dealt with a change in federal constitutional law. *See Babb*, 719 F.3d at

1032 ("*Griffith* alone would not be sufficient to invalidate Babb's conviction because the change at issue was a change in state law." (citing *Murtishaw v. Woodford*, 255 F.3d 926, 955–56 (9th Cir. 2001) (holding that *Griffith* applies only to new constitutional rules))). However, in *Babb* we found the principle clearly established based on subsequent authority that extended the *Griffith* principle to developments in state law. *See id.* Specifically, in *Fiore v. White*, 531 U.S. 225 (2001) ("*Fiore II*"), the Court reversed a defendant's conviction when, after the conviction became final, the state supreme court clarified that the conduct in which the defendant engaged did not constitute a violation of the statute under which he was convicted. *Id.* at 228–29. There, the defendant, William Fiore, was convicted under a Pennsylvania statute that prohibited operating a waste facility without a permit. Although Fiore had a permit to operate a waste facility, he was convicted based on evidence that he deviated from the permit's terms. *Id.* at 226–27.

When Fiore's conviction became final, lower courts in Pennsylvania were divided over whether a defendant could be convicted of operating a waste disposal facility under these circumstances. *Id.*; *see also Fiore v. White*, 528 U.S. 23, 28 (1999) ("*Fiore I*"). After his conviction became final, the Pennsylvania Supreme Court concluded that the statute did not apply to defendants who, like Fiore, possessed a permit but deviated from its terms. *Fiore II*, 531 U.S. at 227 (citing *Commonwealth v. Scarpone*, 634 A.2d 1109, 1112 (Pa. 1993)). The Pennsylvania Supreme Court later stated, in response to a certification of the question by the Court, *see Fiore I*, 528 U.S. at 29, that this interpretation represented a clarification of state law and described the law as it had existed at the time Fiore's conviction became final. *Fiore II*, 531 U.S. at 228. Fiore was thus convicted based on conduct

that the "criminal statute, as properly interpreted, [did] not prohibit." *Id.* Therefore, the Court concluded that the conviction violated the federal Due Process Clause.

We held in *Babb* that, after *Griffith* and *Fiore II*, it was clearly established federal law that some changes to state law are applicable to cases pending on appeal when the new state law is announced. 719 F.3d at 1032–33. *Babb* thus concluded that it was unreasonable under *Griffith* and *Fiore II* for the state court to fail to apply *Byford* to Babb's conviction. *Id.* We were aided in reaching this conclusion by *Bunkley v. Florida*, 538 U.S. 835 (2003), which was decided after the state court ruled on Babb's *Byford* claim. *See id.* at 836–37. *Bunkley* directed the lower court to determine whether a potentially exonerating change in state law had occurred before the defendant's conviction became final, and held that the state court was required to apply that change to the defendant's conviction if it found in the affirmative.

Because *Bunkley* post-dated the Nevada Supreme Court's decision on Babb's *Byford* claim, we did not (and could not) rely on it as clearly establishing the principle that changes in state law apply to cases pending on direct appeal when the law is changed. *See Andrade*, 538 U.S. at 71. However, we further concluded that *Bunkley* confirmed the principles underlying *Fiore II* and *Griffith*. We concluded in *Babb* that *Bunkley* "indicated that failing to apply a potentially exonerating change in the law to a conviction which was not final at the time of the change would have the same effect as failing to apply a clarification of the law." 719 F.3d at 1031–32. We explained that "[o]ne principle underlying *Griffith* is that it is a violation of due process to affirm a conviction 'when the new ruling was that a trial court lacked authority to convict a criminal defendant in the first place.'"

*Id.* (quoting *Griffith*, 479 U.S. at 324). We held that "[t]his principle would necessarily apply to a change in the definition of the elements of mens rea for first degree murder"; therefore, that the state court unreasonably applied clearly established law when it failed to apply *Byford* to Babb's conviction. *Id.*

We did not, however, have the benefit of *Woodall* when we made that determination. *Babb*'s conclusion that *Griffith* and *Fiore II* sufficiently established the rule we applied in *Babb* cannot survive *Woodall*. Neither *Griffith* nor *Fiore II* involved the application of a post-conviction change in state law to a pending conviction: *Griffith* involved a change to a constitutional rule, *Griffith*, 479 U.S. at 316, and *Fiore II* involved a clarification that articulated state law as it had always existed, *Fiore II*, 531 U.S. at 228. *Woodall* prohibits relief under § 2254(d) if there can be "fairminded disagreement" on the question of whether changes in state law apply to cases pending on direct review when the law was changed. *Woodall*, 134 S. Ct. at 1706–07 (quoting *Harrington*, 131 S. Ct. at 787). We conclude that such disagreement is possible.

We have previously held that *Griffith* does not, by itself, extend to changes in state law. *Babb*, 719 F.3d at 1032; *Murtishaw*, 255 F.3d at 956 ("*Griffith* requires retroactive application only of new constitutional rules of criminal procedure[.] It does not require retroactive application of every new state-declared common law rule." (internal citation and quotation marks omitted)). Combining *Griffith* and *Fiore II*, as we did in *Babb*, does not eliminate fairminded disagreement.

It is reasonable to interpret *Fiore II* as establishing that changes in state law must be applied to convictions that are pending on appeal when the change is announced. The Court in *Fiore II* considered whether the interpretation of the state law at issue properly articulated the law "when Fiore's conviction *became final*." 531 U.S. at 226 (emphasis added). The Court certified a question to the Pennsylvania Supreme Court that focused on the state of the law when Fiore's conviction became final:

> Does the interpretation of Pa. Stat. Ann., Tit. 35, § 6018.401(a) (Purdon 1993), set forth in [*Scarpone*], state the correct interpretation of the law of Pennsylvania *at the date Fiore's conviction became final*?

*Fiore I*, 528 U.S. at 29 (emphasis added). When the Pennsylvania Supreme Court replied that the subsequent interpretation articulated the state of the law when Fiore's conviction became final, the Court held that the state court was required to apply the interpretation to his conviction. *Fiore II*, 531 U.S. at 228–29.

Significantly, *Fiore II* did not speak in terms of a *change* or a *clarification*, but only in terms of the status of law when Fiore's conviction became final. *Fiore II* thus can be read as standing for the simple proposition that the reviewing court is required to apply the law as it existed when the defendant's conviction became final. Because *Byford* was the controlling law when Babb's conviction became final, the failure to use the *Byford* instruction would be contrary to *Fiore II* and entitle Babb to relief under § 2254(d)(1) – even though *Fiore II* dealt with a clarification in law and *Byford* represented a change in law.

We cannot say, however, that this is the *only* reasonable interpretation of *Fiore II*. The above analysis requires us to look past *Fiore II*'s specific holding and consider the principles underlying the Court's decision, given that *Fiore II* did not directly deal with the effect of a change in state law. A fairminded jurist could conclude that this alone takes the case outside of § 2254(d)(1)'s purview. *See Andrade*, 538 U.S. at 71. In other words, a fairminded jurist could conclude that because *Fiore II* did not specifically hold that changes in state law apply to convictions pending on appeal, *Fiore II* cannot clearly establish the principle sufficient to warrant relief under § 2254(d)(1), even if the principles underlying *Fiore II* supported this conclusion. *See id.*

*Woodall* drew just such a distinction between the holding of a Supreme Court case and the principles underlying that holding, noting that the holding of a case is the only aspect of that decision relevant to relief under § 2254(d). *See* 134 S. Ct. at 1704 n.4. In *Woodall*, the dissent interpreted the holding of *Estelle*, on which the Sixth Circuit relied, more broadly than did the majority. As noted above, *Estelle* dealt with the penalty-phase introduction of an un-Mirandized psychiatric evaluation. *Estelle*, 451 U.S. at 456. The *Woodall* dissent concluded that in *Estelle* the Court "held that 'so far as the protection of the Fifth Amendment privilege is concerned,' it could 'discern no basis to distinguish between the guilt and penalty phases' of a defendant's 'capital murder trial.'" *Woodall*, 134 S. Ct. at 1707 (Breyer, J., dissenting) (quoting *Estelle*, 451U.S. at 462–63). The majority, however, rejected this broader interpretation of *Estelle*'s holding. In the majority's view, *Estelle* held only "that the defendant's Fifth Amendment 'rights were abridged by the State's introduction of' a pretrial psychiatric evaluation that was administered without the preliminary warning required by

*Miranda*[]. *Id.* at 1704 n.4 (quoting *Estelle*, 451 U.S. at 473).

Here, a fairminded jurist could narrowly interpret *Fiore II*'s holding to conclude that because *Fiore II* specifically addressed only the effect of clarifications, its holding applied only to clarifications in state law. After the Pennsylvania Supreme Court replied to the Court's certification in *Fiore I*, stating that *Scarpone* represented a clarification to state law, the only question before the Court was whether that clarification applied to Fiore's conviction. *Fiore II*, 531 U.S. at 228. And the Court held that it did. *Id.* at 228–29. A fairminded jurist could therefore conclude that *Fiore II* narrowly held that clarifications in state law apply retroactively to the date of the defendant's conviction, to the extent that clarification stated the correct interpretation of the law at the date the conviction became final.[3] Because *Fiore II* only specifically addressed clarification of law, a fairminded jurist could conclude that it applies only to clarifications for purposes of § 2254(d)(1).

---

[3] There is some ambiguity in the Court's jurisprudence over whether application of a new rule or interpretation of law to pending cases requires giving that new rule or interpretation "retroactive" effect. Some decisions suggest that retroactivity is at play. *See, e.g.*, *Griffith*, 479 U.S. at 328 ("We therefore hold that a new rule for the conduct of criminal prosecutions is to be applied *retroactively* to all cases, state or federal, pending on direct review or not yet final . . . ." (emphasis added)). Others, however, indicate otherwise. *See, e.g.*, *Bunkley*, 538 U.S. at 840 ("'[R]etroactivity is not at issue' if the [new interpretation] . . . is 'a correct statement of the law when [a defendant's] conviction *became final*." (emphasis added)). This ambiguity, however, only reinforces our conclusion that *Babb*'s application of *Fiore II* to post-conviction changes in state law is not beyond any "fairminded disagreement."

A fairminded jurist also could conclude that a change of law might differ in substance from a clarification of law. In other contexts, we treat changes in law differently than we treat clarifications. *See, e.g.*, *ABKCO Music, Inc. v. LaVere*, 217 F.3d 684, 691 (9th Cir. 2000) (Congressional acts that change the law require a retroactivity analysis, but Congressional acts that merely clarify existing law do not); *United States v. Johns*, 5 F.3d 1267, 1269 (9th Cir. 1993) (clarifications to the U.S. Sentencing Guidelines apply retroactively to the date of sentencing, but changes might not). A fairminded jurist could conclude that a change in state law is not the same as a clarification to state law – or at least that we cannot necessarily assume that the Court meant to include changes in law when it discussed clarifications. It would thus be reasonable to interpret *Fiore II* as addressing only the effect of clarifications of state law. Under this reasonable interpretation of *Fiore II*, the case does not clearly establish that changes in state law apply to pending convictions, even though clarifications of state law do.

We therefore conclude that *Babb*'s reasoning "disregards perfectly reasonable interpretations of [*Griffith*] and [*Fiore II*] and hence contravenes § 2254(d)'s deferential standard of review." *Woodall*, 134 S. Ct. at 1704. We do not aim to cover the universe of fairminded interpretations of *Fiore II* and *Griffith*, nor do we comment on what we believe to be the correct interpretation of these cases. *See Woodall*, 134 S. Ct. at 1703 (noting that it was not necessary to determine the correct interpretation of the cases on which the lower court relied in granting habeas relief, but only to determine whether there could be fairminded disagreement as to their proper interpretation). Because there are multiple, reasonable interpretations of *Fiore II*, the case cannot serve as the foundation for the clearly established principle that changes

in state law apply to pending convictions under § 2254(d)(1). *See Woodall*, 134 S. Ct. at 1705–06. And we have already determined that *Griffith* cannot serve this function. *See Babb*, 719 F.3d at 1032.

We note that we do not decide today whether *Bunkley* clearly established that changes in state law apply to cases pending on direct appeal. *Bunkley* might have demonstrated that the logical next step from *Griffith* and *Fiore II* was to hold that changes to state law apply to cases pending on direct appeal when the law is changed, but, under *Woodall*, that is insufficient to warrant federal habeas relief under § 2254(d)(1) because before *Bunkley* the Supreme Court had not yet taken that step. *See Woodall*, 134 S. Ct. at 1707 (noting that even if the lower court's interpretation was the "logical next step" from existing precedent, a principle is not clearly established under § 2254(d)(1) until the Court actually takes that step). In any event, *Bunkley* is not relevant to *Babb* because it post-dated the relevant state court decision in that case.

We express no opinion as to whether *Babb* remains good law, after *Woodall*, with respect to defendants whose convictions became final after *Bunkley* was decided. We conclude only that *Woodall* overruled *Babb* only as to its holding that the state court's failure to apply the *Byford* instruction to Babb's conviction, which pre-dated *Bunkley*, was contrary to clearly established federal law. Even after *Woodall*, claims by defendants whose *Byford* claims post-dated *Bunkley* might remain viable, and we express no opinion on those claims.

## C.

In sum, we hold that *Woodall*'s clarification of the unreasonable-refusal-to-extend rule is "clearly irreconcilable" with *Babb*'s conclusion that the Nevada Supreme Court unreasonably applied Supreme Court precedent by failing to apply a change in state law to Babb's pending conviction. *See Miller*, 335 F.3d at 893. *Woodall* thus "effectively overruled" *Babb* with respect to petitioners for whom, like Babb, the relevant state court decision pre-dated *Bunkley*. For those convictions, we are no longer bound by *Babb*. *Id.*

## D.

Moore was convicted in 1999. His conviction became final – and the Nevada Supreme Court issued its relevant decision – in 2001, upon the denial of his direct appeal. Because there can be fairminded disagreement regarding whether *Griffith* and *Fiore II* apply to post-conviction changes in state law, the Nevada Supreme Court did not unreasonably apply clearly established federal law when it declined to apply the *Byford* instruction to Moore's case. *See Woodall*, 134 S. Ct. at 1706.

## IV.

For the reasons discussed above, we reverse the district court's grant of Moore's petition for a writ of habeas corpus and remand with directions to enter judgment for the State, denying the petition.

**REVERSED and REMANDED.**